Fifth Division

June 29, 2001

No. 1-99-3478 

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of 

Plaintiff-Appellee, ) Cook County.

)

) 99 CR 1576

OTIS KNIGHT, )

Defendant-Appellant. ) The Honorable

) Lon William Shultz,

)
 
Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, the defendant, Otis Knight, was convicted of possession of cocaine with intent to deliver.  He was sentenced to six years in the Illinois Department of Corrections.  The principal witness for the State was Officer Roberto Miranda and it is his testimony that gives rise to the issue of whether the trial court properly excluded testimony revealing the exact location of Officer Miranda while he was conducting a surveillance of defendant. 

Officer Miranda testified that on December 5, 1998, at approximately 6:45 p.m. he and his partner were conducting a narcotics surveillance somewhere in the vicinity of 2910 West Fillmore in Chicago, Illinois.  They received information that a man wearing dark sweatpants and a red jacket was selling narcotics somewhere in the area.  While on foot, about 1,000 feet from his parked vehicle, Officer Miranda saw a man he identified in court as defendant standing on the sidewalk in front of 2910 West Fillmore.  Officer Miranda testified that he was standing approximately 50 feet away from defendant when a van pulled up to defendant.  The passenger in the van gave defendant an unknown amount of money.  Officer Miranda stated that he could see three-quarters of defendant's face and had a clear view of the passenger side of the van.  Officer Miranda did not use any type of visual aid while observing defendant.

After defendant took the money from the passenger in the van, Officer Miranda testified that defendant turned around and walked toward a nearby flower pot where he reached in and pulled out a brown paper bag.  Officer Miranda claimed that defendant removed an object from inside the bag, walked back to the passenger side of the van, and gave the object that he removed from the bag to the passenger.  The van then drove away.

After viewing the transaction between defendant and the passenger of the van, Officer Miranda and his partner walked back to their car and drove to 2910 West Fillmore.  Officer Miranda admitted that from the time he left the surveillance point to when he reached 2910 West Fillmore, which took approximately one to two minutes, he lost sight of the man who tendered the object to the passenger of the van.  When Officer Miranda and his partner arrived at 2910 West Fillmore, they exited their vehicle and approached defendant.  Shortly thereafter, Officer Miranda returned to the surveillance point and removed a brown paper bag from the flower pot.  The brown paper bag contained five clear plastic bags.  Inside these five clear bags, there was a total of 125 smaller bags of a rock-like substance suspected to be crack cocaine.  After finding the contraband, Officer Miranda placed defendant under arrest.  Officer Miranda admitted that at the time he arrested defendant there were several bystanders nearby.  No money or contraband was recovered from defendant.  

Prior to arresting defendant, Officer Miranda had observed him for approximately five minutes and from his observation of defendant he could not recall what type of jacket he was wearing.  However, Officer Miranda testified that defendant did fit the description of the individual who was involved in the transaction with the passenger of the van.

The parties stipulated to the testimony of Jeffrey Buford, a forensic chemist associated with the Illinois State Police, who tested 80 of the 125 recovered bags.  All 80 of the tested bags tested positive for the presence of 15.7 grams of cocaine.  

Reverend Hazel Fort testified that she lives at 2918 West Fillmore and that her church is located at 2916 West Fillmore.  At the time of trial, Reverend Fort testified that she had known defendant for several months.  Reverend Fort asserted that sometime after 3 p.m. on the day of the crime in question, defendant assisted her in unloading the church's van, which was parked between 2916 and 2918 West Fillmore.  According to Reverend Fort, she never saw defendant selling narcotics in the area on the day in question.

Yvette Young, defendant's girlfriend of four years at the time of the trial, testified that on the day in question defendant helped Reverend Fort unload a van at approximately 4:30 p.m.  According to Young, defendant helped Reverend Fort for about 15 minutes and was arrested a few minutes later.  Young stated that she told the police that defendant was not selling drugs on the day in question and that another man, with a jacket similar to defendant's, was selling drugs nearby.  

Defendant testified that on the day in question he was standing in the vicinity of 2916 and 2918 West Fillmore when Reverend Fort asked him to help unload a van filled with furniture for the church.  Defendant testified that he unloaded furniture for 45 minutes to an hour.  After he finished unloading furniture, he was walking down the street to Young's house when he was stopped and searched by Officer Miranda while other officers retrieved the brown paper bag.  A lighter and a box cutter were recovered from defendant.  Defendant testified that he told the police he had not been selling drugs that day but that a man he knew as "D.C.," who wore a coat similar to his own, was in the area selling drugs.  

On August 18, 1999, the court sentenced defendant to six years in the Illinois Department of Corrections for possession of cocaine with the intent to deliver.  Defendant's sentence was ordered to run consecutively with his one-year sentence for his violation of probation.  Defendant now appeals the judgment and argues that the trial court violated the confrontation clause (U.S. Const., amend. VI) when it restricted defense counsel's cross-examination of Officer Miranda as to the exact location of his surveillance. 

Defendant asserts that the trial court improperly precluded him from cross-examining Officer Miranda regarding the officer's exact point of surveillance.  Specifically, defendant argues that since the State's case rested entirely on Officer Miranda's credibility and his ability to observe the purported drug transaction, the trial court committed reversible error by unduly restricting defense counsel's cross-examination of Officer Miranda regarding his vantage point at the time of surveillance.  The trial court allowed defense counsel to cross-examine Officer Miranda regarding "his distance, the lighting, opportunity to observe, obstructions blocking his view, and things of that nature without requiring the officer to disclose the exact location of this surveillance."  The trial court stated that, based on certain case law, Officer Miranda was not required to reveal the exact location of his surveillance point.  Thus, the issue now before the court is whether the trial court violated defendant's rights under the sixth amendment's confrontation clause by prohibiting defense counsel from cross-examining Officer Miranda as to his exact surveillance point.  We conclude that defendant's rights under the sixth amendment were violated and, therefore, the instant matter is reversed and remanded.

The United States Supreme Court has held that a criminal defendant has the right to confront the witnesses against him, including the right to cross-examine those witnesses. 
Cruz v. New York
, 481 U.S. 186, 189, 95 L. Ed. 2d 162, 169, 107 S. Ct. 1714, 1717 (1987); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8.   The Illinois Supreme Court has stated that "when identification is in issue the defendant should be given considerable latitude on cross-examination of the identifying witness to test the identification, the means of observation and the memory of the witness." 
People v. Struck
, 29 Ill. 2d 310, 311 (1963), citing 
People v. Del Prete
, 364 Ill. 376 (1936) and 
People v. Coli
, 2 Ill. 2d 186 (1954); 
People v. Hunley
, 189 Ill. App. 3d 24, 41 (1989);
.  However, "[a] trial court may not deprive a defendant of the right to question witnesses; however, it may limit the scope of cross-examination." 
People v. Criss
, 294 Ill. App. 3d 276, 279 (1998), citing 
People v. Frieberg
, 147 Ill. 2d 326, 357 (1992).  Keeping in mind that a trial court is granted broad discretion, the appellate court is to determine whether the lower court abused its discretion in deciding to exclude certain testimony. 
People v. Enis
, 139 Ill. 2d 264, 282 (1990); 
People v. Criss
, 294 Ill. App. 3d at 279-80.  

In the case of 
People v. Criss
, 294 Ill. App. 3d 276 (1998), the Fourth District addressed the issue of whether a State witness must disclose the exact location of a surveillance point as an issue of first impression.  The Fourth District held that under certain circumstances, surveillance officers are not required to disclose established surveillance points on cross-examination.  In reaching this holding, the Fourth District noted that this court has held that "[w]hen disclosure of a fact is refused during cross-examination, the public interest in protecting the flow of information must be balanced against the individual's right to prepare his defense." 
Criss
, 294 Ill. App. 3d at 280, citing 
People v. Herrera
, 238 Ill. App. 3d 284, 291 (1992).    

In 
Criss
, the defendant, like the defendant in the case at bar, was charged with unlawful possession with intent to deliver a controlled substance.  The issue of whether a State witness must disclose the exact location of a surveillance point 
arose in the context of the defendant's motion to suppress
.  At the defendant's suppression hearing, two police officers testified that they were positioned at two different concealed locations. 
Criss
, 294 Ill. App. 3d at 277.  Both officers testified that from approximately 2:30 a.m. until 4 a.m. they witnessed "a heavy-set black male wearing a blue and white Fila coat interact with several individuals at the residence." 
Criss
, 294 Ill. App. 3d at 277.  At the hearing, the officers identified the defendant as the person they saw wearing the Fila coat. 
Criss
, 294 Ill. App. 3d at 277.  

In deciding that the officers in 
Criss
 were not required to disclose the exact location of their surveillance point, the Fourth District relied on the rationale that upholds the privilege protecting law enforcement informants.  The Fourth District stated, "[t]he State may refuse to disclose the identity of law enforcement informants, so long as the nondisclosure will not deny an accused his constitutional rights." 
Criss
, 294 Ill. App. 3d at 280.  The informant privilege may be overcome by showing a need for disclosure that supercedes a " 'mere desire to cross-examine.' " 
Cochrane's of Champaign, Inc. v. Illinois Liquor Control Comm'n
, 285 Ill. App. 3d 28, 33 (1996), quoting 
People v. Sutton
, 260 Ill. App. 3d 949, 958 (1994).  The Fourth District in 
Criss
 noted that "[f]ederal courts have held the policy justifications analogous to those underlying the informer's privilege supported a qualified surveillance location privilege." 
Criss
, 294 Ill. App. 3d at 280, citing 
United States v. Green
, 670 F. 2d 1148, 1155 (D.C. Cir. 1981); 
United States v. Harley
, 682 F. 2d 1018, 1020 (D.C. Cir. 1982).  For the same reasons, Massachusetts and Pennsylvania also recognize the surveillance location privilege. 
Criss
, 294 Ill. App. 3d at 281, 
Commonwealth v. Lugo
, 406 Mass. 565, 570, 548 N.E. 2d 1263, 1265 (1990); 
Commonwealth v. Jennings
, 428 Pa. Super. 297, 305-07, 630 A.2d 1257, 1262 (1993).  

The states that recognize the surveillance location privilege hold that the privilege is not absolute. 
Criss
, 294 Ill. App. 3d at 280.  The extent of the privilege is left up to the trial court. 
Criss
, 294 Ill. App. 3d at 280, citing 
Carter v. United States
, 614 A.2d 913, 915 (D.C. 1992).  The Fourth District found that these courts generally hold that "the defendant may overcome the privilege by making a strong showing that the disclosure of the location is material or necessary to his defense and that his need for the information outweighs the public's interest in keeping the location secret." 
Criss
, 294 Ill. App. 3d at 280-81, citing 
Jennings
, 428 Pa. Super. at 306-07, 630 A.2d at 1262; 
Lugo
, 406 Mass. at 570-72, 548 N.E. 2d at 1265-67; 
Harley
, 682 F. 2d at 1020.  However, even where the defendant cannot overcome the surveillance privilege, defense counsel should be allowed to cross-examine the officer's observations regarding distance, weather, and any possible obstructions. 
Criss
, 294 Ill. App. 3d at 281, citing 
United States v. Green
, 670 F. 2d 1148, 1156 (D.C Cir.1981).   

Taking these guidelines into consideration, the 
Criss
 court found that the defendant failed to make an adequate showing that the exact location of the surveillance location was essential to his defense.  Of particular significance, the court noted that one of the officers testified that he "saw defendant arrested immediately after he saw defendant's last transaction with the black female." 
Criss
, 294 Ill. App. 3d at 281.  Further, the officer did not lose sight of defendant from the time of his drug transaction to the time of his arrest. 
Criss
, 294 Ill. App. 3d at 281.  Lastly, the court found that defendant was given the opportunity to examine both of the officers as to the distance, weather, lighting, and any possible sight obstructions.  That being noted, the Fourth District found no reason to believe that the officers' testimonies were not credible.  Consequently, the court went on to hold that the trial court did not abuse its discretion or violate defendant's constitutional right. 
Criss
, 294 Ill. App. 3d at 281-82.  

It is well settled that a defendant must raise an objection at trial and in a written posttrial motion to properly preserve issues for review. 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988). 
 Moreover, this court has previously held that "general and vague allegations in a posttrial motion are not sufficient to overcome waiver." 
People v. Parchman
, 302 Ill. App. 3d 627, 632 (1998), citing 
People v. Brown
, 267 Ill. App. 3d 482, 484 (1994); 
People v. Buchanan
, 211 Ill. App. 3d 305 (1991).  "Where an objection is sustained to the offered testimony of a witness, an adequate offer of proof is made if counsel makes known to the trial court, with particularity, the substance of the witness' anticipated answer." 
People v. Andrews
, 146 Ill. 2d 413, 421 (1992), citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7, at 21 (5th
 ed. 1990).  Counsel must specifically state what the excluded testimony would reveal, rather than simply allude to what might be revealed. 
Andrews
, 146 Ill. 2d at 421.  However, even where an error was not called to the attention of the trial court, this court can review the issue where Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) is applicable.  According to Supreme Court Rule 615(a), a ruling can be examined for plain error where the evidence is closely balanced or "where the error is of such magnitude that it denied the accused a fair and impartial trial." 
People v. Parchman
, 302 Ill. App. 3d at 633, citing 
People v. Buckley
, 282 Ill. App. 3d 81, 88 (1996).   

Defendant in the case at bar claims that this court should reverse his conviction because the trial court's error in prohibiting the cross-examination of Officer Miranda as to the exact location of surveillance is of such great magnitude that it deprived him of a fair and impartial trial.  Under a plain error analysis, the alleged mistakes must first be examined to determine whether errors occurred, and, if so, a determination must then be made as to whether the errors rose to the level of plain error. 
People v. Herrett
, 137 Ill. 2d 195, 210 (1990)
.  The Illinois Supreme Court has held that "[a] reviewing court will grant relief under this prong of the plain error rule only if the error is so fundamental to the integrity of the judicial process and so prejudicial to the defendant that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error. [Citation.] Otherwise, defense counsel could obtain a reversal * * * simply by failing to object and by design depriving the trial court of the opportunity to prevent or correct the error." 
People v. Herrett
, 137 Ill. 2d 195, 215 (1990), citing 
People v. Carlson
, 79 Ill. 2d 564, 577 (1980).  Where the error is so damaging that the prejudicial effect to the defendant cannot be erased by sustaining an objection or instructing the jury to disregard the error, "a court of review will grant relief if the trial error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from such error." 
People v. Carlson
, 79 Ill. 2d 564, 577 (1980), citing 
People v. Wright
, 56 Ill. 2d 523, 533-34 (1974); 
People v. Manzella
, 56 Ill. 2d 187, 200 (1973).    

A complete review of defense counsel's cross-examination of Officer Miranda shows that defense counsel never made an offer of proof explaining how the officer's exact location would advance the defense theory.  Additionally, defendant's motion for a new trial does not assert that knowing Officer Miranda's exact surveillance location would have helped defendant's case.  Based on the absence of an adequate offer of proof, defendant waived this issue for review.  Since defendant waived this issue for review under the general rule of waiver, we must now determine whether defendant has waived this issue under a plain error analysis.  

Under the plain error rule, relief will be granted only if the error is so fundamental to the integrity of the judicial process and so prejudicial to the defendant that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error.  In light of the holding of the United States Supreme Court, we recognize that the right to confront a witness, including the right to cross-examine a witness, is a fundamental right. 
Cruz v. New York
, 481 U.S. 186, 189, 95 L. Ed. 2d 162, 169, 107 S. Ct. 1714, 1717 (1987); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8.  Consequently, pursuant to Supreme Court Rule 615(a), this issue has not been waived.  Since this issue has not been waived, we must determine whether the trial court erred in prohibiting defense counsel from cross-examining Officer Miranda regarding his exact surveillance point.  In other words, we must determine whether the surveillance privilege applied in the case at bar.  If we find that the surveillance privilege is applicable, then we must hold that defendant was not prejudiced.  However, if we find that the surveillance privilege is not applicable, than we must hold that defendant was denied his constitutional right to confront a witness and, thus, unduly prejudiced. 

As previously stated, the appellate court is to determine whether the lower court abused its discretion in deciding to exclude certain testimony. 
People v. Enis
, 139 Ill. 2d 264, 282 (1990); 
People v. Criss
, 294 Ill. App. 3d at 279-80.  In the case at bar, defense counsel never explained why it was so crucial that defendant be allowed to cross-examine Officer Miranda as to his 
exact
 location of surveillance.  Further, the trial judge allowed Officer Miranda to be cross-examined as to distance, weather, lighting, and obstructions.  According to the guidelines set forth by the Fourth District in 
Criss
, defendant's right to cross-examine defendant was not 
severely
 limited
.

In 
Criss
, the defendant, like the defendant in the case at bar, was charged with unlawful possession with intent to deliver a controlled substance.  However, in 
Criss
, the issue of whether a State witness must disclose the exact location of a surveillance point came up in the context of the defendant's motion to suppress.  In the case at bar, we must determine whether a State witness must disclose the exact location of a surveillance point in the context of a trial.  Thus, the issue in the case at bar is slightly different from that in 
Criss
, making this an issue of first impression for this court.  

In 
Roviaro v. United States
, 353 U.S. 53, 60, 1 L. Ed. 2d 639, 644-45, 77 S. Ct. 623, 627-28 (1957), the seminal case on the informer's privilege, the United States Supreme Court recognized that privileges such as the informer's privilege and the surveillance privilege are limited by a fundamental requirement of fairness.  A defendant's sixth amendment right to confront the witnesses against him, including the right to cross-examine these witnesses, is a fundamental requirement of a constitutionally fair trial. 
Criss
, 294 Ill. App. 3d at 279, citing 
People v. Rutledge
, 135 Ill. App. 3d 259, 261-62 (1985).  

We hold that the surveillance privilege should be treated differently when raised at a suppression hearing as opposed to when it is 
raised at a trial.  In 
United States v. Foster
, the Court of Appeals for the District of Columbia stated:

"Suppression hearings determine whether the police engaged

in unlawful conduct, and seek to deter such conduct by 

excluding evidence.  Trials decide whether the accused 

committed the offense charged.  Privileges shield witnesses

from cross-examination.  A defendant's right of cross-

examination is more limited at suppression hearings than at trials,

which is why hearsay is generally admissible at the former but 

not at the latter." 
United States v. Foster
, 986 F. 2d 541, 543 

(D.C. Cir.1993), citing 
United States v. Raddatz
, 447 U.S. 667, 

679, 65 L. Ed. 2d 424, 435, 100 S. Ct. 2406, 2414 (1980). 

Similarly, in 
Commonwealth v. Lugo
, 406 Mass. 565, 571, 548 N.E.2d 1263, 1266 (1990), the Supreme Court of Massachusetts stated that there is a distinction which should be recognized "between a demand for disclosure at a pretrial hearing, where the issue is probable cause for arrest or a search, and a demand for disclosure at trial, where the issue is the defendant's ultimate guilt or innocence."  Based on these principles, both the 
Foster
 court and the 
Lugo
 court agree that nondisclosure is more befitting of a suppression hearing rather than of a trial.   We agree with the 
Foster
 and 
Lugo
 courts and hold that at trial disclosure of a surveillance point will be compelled if the allegedly privileged information is material on the issue of guilt. See J. Wigmore, Evidence §2374, at 768 (McNaughton rev. ed. 1985).  The determination of guilt or innocence, which takes place at a trial, mandates a more staunch standard than that advocated by this court in 
Criss
. 
Commonwealth v. Lugo
, 406 Mass. 565, 573, 548 N.E.2d 1263, 1267 (1990).  Further, the 
Foster
 court noted that the more crucial the witness is to the government's case, the more important the defendant's right to cross-examine the witness. 
Foster
, 986 F.2d at 543, citing 
Davis v. Alaska
, 415 U.S. 308, 319, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1112 (1974).  

Upon recognizing the need for disclosure of surveillance points at trial, we find the trial court should order an 
in camera
 hearing out of the presence of defendant and defense counsel.  At the 
in camera
 hearing, the State witness must reveal the surveillance location from which the defendant was watched.  At this hearing "the State must make a preliminary showing that disclosure of the surveillance location would harm the public interests and should therefore remain privileged." 
State v. Zenquis
, 131 N.J. 84, 88; 618 A.2d 335, 337 (1993).  The trial judge should then weigh the defendant's need for this information against the public's interest in nondisclosure of the surveillance point. 
Zenquis
, 131 N.J. at 89, 618 A.2d at 337.      

In considering the public's interest in nondisclosure there are several factors that should be considered by the trial judge.  These factors are: the crime with which the defendant is charged, the possible defenses, and the potential significance of the privileged information.  In 
Criss
, the Fourth District noted that "[i]f secret surveillance positions are revealed, building owners who may have previously consented to the use of their property for surveillance purposes may withdraw their consent." 
Criss
, 294 Ill. App. 3d at 281.  In essence, the Fourth District, in 
Criss
, concluded that "[p]roperty owners should be encouraged to tender their property and buildings for effective law enforcement purposes." 
Criss
, 294 Ill. App. 3d at 281.  More broadly, the 
Criss
 court held that whether a surveillance location is disclosed should be determined on a case-by-case basis, balancing the public's interest in keeping the location secret with the defendant's interest in preparing his defense. 
Criss
, 294 Ill. App. 3d at 281, citing 
Cochrane's of Champaign, Inc.
, 285 Ill. App. 3d at 33.  Just as the 
Criss
 court decided that a qualified privilege exists at a suppression hearing for the disclosure of a surveillance location, we hold that a qualified privilege exists at a trial for the disclosure of a surveillance location.    

In finding that a qualified privilege exists at trial, we stress that where a defendant's need for the location information is so great that the case against him turns almost exclusively on an officer's testimony, disclosure must almost always be ordered.  Where an officer's testimony is uncorroborated, like in the case at bar, the application of the privilege will severely hamper the defendant's ability to cross-examine the officer on the key factual issues.  The only instances in which nondisclosure would positively not be necessary is where "no question is raised about a surveillance officer's ability to observe or where a contemporaneous videotape provides the relevant evidence." 
State v. Reed
, 101 Wash. App. 704, 716, 6 P.3d 43, 49 (2000).  In the case at bar, questions are raised regarding Officer Miranda's ability to observe, and, further, a videotape has not been offered into evidence.  

Lastly, in the case at bar the State argues that defendant has failed to cast sufficient doubt on the accuracy of Officer Miranda's testimony.  The State even goes so far as to weave this argument into its assertion that defendant failed to show a substantial need for this information and, thus, failed to preserve this issue for review.  Like the court in 
Foster
, we find this argument worthless.  After all, "[c]reating such doubt would have been one of the objectives of cross-examination following revelation of the observation post. *** An effective trial lawyer can often manage to leave the jury with the impression that the witness is too caught up in his own view, his confusions, his own particular slant on things, that it simply does not matter whether the witness believes his own testimony." 
Foster
, 986 F.2d at 544.  Thus, in response to this argument, we find that defendant was deprived of the opportunity to cast doubt upon Officer Miranda's testimony and that the denial of this right constitutes prejudicial error.  

For the foregoing reasons, we reverse defendant's conviction and remand this case to the trial court for a new trial in accordance with this opinion.

Reversed and remanded.

QUINN, P.J., and THEIS, J., concur.