FIRST DIVISION
Filed: 5-14-07

No. 1-05-2493

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 7923 |
| | ) | |
| CLEO BELL, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Cleo Bell was convicted of possession of a controlled substance with intent to deliver after a bench trial. A sentencing hearing was conducted where mitigation and aggravation were presented. The trial court sentenced defendant to 38 months in the Illinois Department of Corrections, with a credit of 122 days for time served while awaiting sentencing, and assessed fines and fees in the amount of $1,114. Defendant filed a motion for a new trial, which was denied. Defendant appeals arguing that (1) the trial court violated defendant's sixth amendment right to confront witnesses against him when the trial court did not allow defendant to cross examine the surveillance officer as to his exact surveillance location, (2) the trial court erred by failing to appoint new counsel to represent defendant on his posttrial claim that his attorney took insufficient steps to locate a key witness, and (3) the trial court improperly assessed a $20 Violent Crime Victims Assistance Fund fine.[1]

---

[1] Defendant has withdrawn his argument that the imposition of the $5 Spinal Cord Injury

BACKGROUND

Officers Fron and Purvis of the Chicago police department were part of a surveillance team in the area of a vacant lot located at 4413 West Gladys Street (subject property) on March 1, 2005, at approximately 11 a.m. Officer Fron was the surveillance officer for the operation. Officer Fron testified that he had a southwest view of the subject property from an elevated position approximately 20 feet above ground level. Officer Purvis was positioned at the West 4300 block of Adams Street and was in radio contact with Officer Fron but did not have a view of the subject property.

From his surveillance point, Officer Fron observed defendant standing alone in the vacant lot located at the subject property yelling "blows" to passing motorists and pedestrians. Officer Fron testified that the nearest person to defendant was 80 to 90 feet away. About eight or nine minutes after setting up surveillance, Officer Fron observed a blue automobile driven by a white male pull over to the curb of the street in front of defendant. After a brief conversation, the driver of the blue automobile handed defendant money, which he placed in his pants pocket. Officer Fron then observed defendant walk approximately 30 feet to a covered black garbage can. Without opening the garbage can, the defendant retrieved a brown paper bag that was wedged between the plastic lid covering the garbage can and the garbage can itself. Defendant opened the

Paralysis Cure Research Trust Fund fine is unconstitutional in light of our Illinois Supreme Court's decision in *People v. Jones*, 223 Ill. 2d 569, 605-06 (2006), which upheld the fine's constitutionality.

brown paper bag and removed a clear plastic bag containing several shiny items. Defendant removed one of the shiny items, placed the clear plastic bag inside the brown paper bag and returned the brown paper bag to its original location wedged between the garbage can and the garbage can lid. Defendant walked back to the blue automobile and handed the shiny item to the driver. The driver of the blue automobile drove off after receiving the shiny item and was never stopped by the police.

Believing that he had witnessed a drug transaction, Officer Fron radioed Officer Purvis to pick him up from his surveillance location. Together, the officers proceeded to defendant's location in Officer Purvis's squad car. Officer Fron lost sight of defendant for approximately two to three minutes while traveling from his surveillance location to defendant's location. The officers arrived at the subject property and detained the defendant. The nearest person to defendant when the police detained him was 30 feet away. Officer Fron then went to the subject garbage can and retrieved the brown bag, which contained a clear plastic bag and five tinfoil packets containing suspected heroin. After the officers placed defendant under arrest, a search of defendant's person revealed $74, but no narcotics.

The officers then transported defendant and the suspected narcotics to the police station. The officers placed the five tinfoil packets of suspected heroin, the brown paper bag, and the clear plastic bag into an inventory bag, wrote the case information on the inventory bag, entered the same information into the station computer, and assigned the inventory bag and its contents an inventory number and gave it to the officer in charge of evidence. One of the tinfoil packets tested positive for .1 gram of heroin.

No. 1-05-2493

Defendant was subsequently charged by information with possession of a controlled substance with intent to deliver and possession of a controlled substance with intent to deliver within 1,000 feet of a school. 720 ILCS 570/401(d), 407(b) (West 2004).

At trial, Officer Fron testified that he observed defendant from an elevated position, 20 feet above ground level, on March 1, 2005, alone, pacing and yelling "blows" to passing motorists and pedestrians from the subject property. Defendant was as close as 60 and as far as 90 feet away from Officer Fron's surveillance point depending on defendant's movement during the eight to nine minutes the officer maintained sight of him. Officer Fron testified that he observed defendant under premium weather conditions, he had an unobstructed view of defendant and he used binoculars periodically during his surveillance. He also testified that the nearest person to defendant other than the driver of the blue vehicle during the surveillance was at least 80 to 90 feet away from defendant. On cross-examination, Officer Fron testified that the surveillance location that he was using that day was frequently used by police to monitor the area around the subject property because the area was known to have high narcotics activity. Defense counsel showed Officer Fron a defense exhibit consisting of a blank piece of paper with a drawn intersection depicting Gladys Street and Kostner Avenue not drawn to scale. Officer Fron was asked to mark the exhibit with the letter "D" to indicate where the officer first observed defendant and he did so. Defense counsel then asked if the officer would place an "S" on the exhibit to mark the officer's surveillance location at which point the prosecution invoked the surveillance location privilege. The following took place at trial:

"Q. Officer, with respect to this D, would you be able to

4

indicate with an S approximately where your surveillance location was?

A. It is actually private property. So I don't know if I am obliged to give up that location.

Q. I am not asking you to give up the location. I am asking you to indicate with an S approximately where your surveillance location was on this diagram.

MR PARK (prosecutor): Objection.

THE COURT: What is the objection?

MR. PARK: Judge, as the officer indicated, marking on that even though not to scale rough drawing, he would still give up that location. It is private property. Other people's safety and officers may be at risk. The officer can testify as to the distance, the angle, whether there was [an] obstruction or not, whether he was elevated, whether he used binoculars, to what direction he was looking at. All that should suffice for the Defense's ability to cross-examine him on officer's ability to observe. But marking on that rough diagram not to scale may jeopardize safety of others.

THE COURT: It sounds like the State is invoking the secrecy of the surveillance location. What is your position on that?

DEFENSE COUNSEL: Judge, I don't think this is

5

going to reveal the location. I am not saying what building were you in, where in the building were you.

THE COURT: You can ask questions about the direction he was facing. He has given you a distance. But marking on the plat you have there would significantly identify which building, which would cause difficulty for the people who are apparently giving the police permission. Objection sustained. *** He can testify if his view was going south, east, west, if he was in front or behind, but I will not allow him to mark on the paper."

After the invocation of the surveillance privilege, defense counsel cross-examined Officer Fron as to what direction the defendant was facing from the officer's surveillance point and whether any trees obstructed the officer's view of defendant. The officer answered that he had a southwest view of the defendant and that his view was unobstructed. Officer Fron was also asked to describe his familiarity with the area and describe buildings and landmarks in the area, which he did.

Defendant testified on his own behalf at trial and claimed that he was in the area because he worked in a garage located near the subject property with his partner, Phillip Baker. Defendant testified that he was walking to his partner's home, located on West Gladys Street, to wake his partner so that they could open the garage, when two police officers stopped him in a squad car on Van Buren Street. He testified that one of the officers exited the car on Van Buren Street and walked through a nearby alley to Gladys Street, while the other officer drove defendant

to the subject property. He testified that when he and the officer reached 4413 West Gladys Street, he was placed under arrest and that the $74 found on his person was from working in the garage.

On direct examination, defendant testified that he was in the vacant lot at the subject property, but on cross-examination stated that he was never in the vacant lot on that day. At one point in his testimony, the defendant stated that he was headed to the garage when the police stopped him and, as noted, at another point that he was coming from the garage when he was stopped.

The trial court found defendant guilty of possession of a controlled substance with intent to deliver and not guilty of possession of a controlled substance with intent to deliver within 1,000 feet of a school.

Before the court heard arguments on the motion for new trial, the parties discussed the contents of the presentence investigation report (PSI). According to the PSI, defendant made the following statement to his probation officer:

"I asked my public defender to subpoena my co-worker [Phillip Baker] and my public defender told me that he called my co-worker and my co-worker said he wants nothing to do with this case. I know that my public defender was lying because my co-worker does not have a telephone."

Immediately thereafter, the trial court inquired into defense counsel's efforts to secure the testimony of defendant's partner, Phillip Baker. The following took place on the day of sentencing:

"THE COURT:         *** [D]id your client make that request to contact his co-worker.

DEFENSE COUNSEL:         That's part of the problem. The problem is finding out who the co-worker is and where they live ***. I was provided with an address that is a vacant lot ***. So, the closest person that lived to the vacant lot was by the name of Phillip C. Baker. I had a phone number. When I called, the person answered, said that this is the wrong number ***. I'm not sure how to contact this unknown person that lives in a vacant lot and can't be tracked down by any sort of information number. Simultaneously, the defendant wanted to demand trial, so that's the best I can do, Judge.

THE COURT: His allegation that you told him that this co-worker had nothing to do with this case is accurate?

DEFENSE COUNSEL:         Yes. I don't see *** we would like to have the co-worker.

THE COURT: No, I understand that. Here's the problem I'm trying to get to. After you made this contact with this person when the original address was a vacant lot, did you report what your findings were to your client?

DEFENSE COUNSEL:         Oh, right. I might have said something along the lines if this person was in fact Mr. Baker, the co-

8

worker, perhaps he didn't want anything to do with the case. They are refusing to identify themselves or say, you know, they know anything about the case.

THE COURT: Okay. Mr. Bell, did you give your attorney a name or just ****

DEFENDANT: The name. His name is Phillip Baker.

THE COURT: The person that your attorney said that he called and the guy said it was the wrong number.

DEFENDANT: He said [sic] he called him.

THE COURT: That's what he's saying.

DEFENSE COUNSEL: I also went to the scene too, Judge, took pictures, sent an investigator.

THE COURT: I remember those pictures. So, the parties want to proceed?"

The trial court did not appoint new counsel to represent defendant in his ineffective assistance of counsel claim. The defendant then moved for a new trial, arguing that the court erred by allowing the State to invoke the surveillance location privilege and arguing that the State did not prove defendant guilty beyond a reasonable doubt because there was a question of whether the police officer could observe the defendant hand something to the driver of the blue automobile because of the officer's vantage point. Specifically, the defendant argued that, had the

9

State revealed the surveillance location the evidence would have shown that the officer's view of the alleged transaction would have been obstructed by the blue automobile's roof. The motion for new trial was denied and the defendant was sentenced to 38 months with a credit for 122 days for time served while awaiting sentencing. Defendant filed a timely appeal.

ANALYSIS

Defendant argues that the trial court violated his sixth amendment right to confront witnesses against him when it allowed the State to invoke the surveillance location privilege. U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him). Defendant asserts that the trial court should have required Officer Fron to reveal his exact surveillance point based on this court's decision in *People v. Knight*, 323 Ill. App. 3d 1117 (2001).

"A defendant has a fundamental right to confront witnesses against him, but the trial court may limit the scope of cross-examination." *People v. Quinn*, 332 Ill. App. 3d 40, 43 (2002). The right to cross-examine is not absolute and is satisfied when "the defendant is permitted to expose the fact finder to facts from which it can assess [the] credibility and reliability of the witness." *Quinn*, 332 Ill. App. 3d at 43. The latitude permitted on cross-examination is largely left to the discretion of the trial court and its determination "will not be disturbed 'absent a clear abuse of discretion that resulted in manifest prejudice.' " *Quinn*, 332 Ill. App. 3d at 43, quoting *People v. Criss*, 294 Ill. App. 3d 276, 279-80 (1998).

The State has the benefit of a qualified privilege regarding disclosure of secret surveillance locations. *Quinn*, 332 Ill. App. 3d at 43. "The need for disclosure is decided on a case-by-case

basis, balancing the public interest" in preserving and holding secret the surveillance location with the defendant's need of disclosure of the surveillance location to prepare a defense. *Quinn*, 332 Ill. App. 3d at 43. Trial courts should endeavor to protect the "public interest in keeping the exact surveillance location secret" but also take steps necessary "to ensure accurate fact[-]finding." *Quinn*, 332 Ill. App. 3d at 43. Factors relevant in the trial court's analysis regarding the public interest in nondisclosure are "the crime charged, the possible defenses, and the potential significance of the privileged information." *Quinn*, 332 Ill. App. 3d at 43. The disclosure of a surveillance point will be compelled if the privileged information is material to the issue of guilt. *Quinn*, 332 Ill. App. 3d at 44, citing *Knight*, 323 Ill. App. 3d at 1126-27.

Defendant argues that had the officer revealed his exact surveillance location the evidence would have established that Officer Fron did not see the hand-to-hand transaction from his vantage point because the roof of the blue automobile would have obstructed the officer's view. In essence, defendant argues that the trial court abused its discretion by limiting the cross-examination of Officer Fron because the issue of whether Officer Fron observed the hand-to-hand transaction was material to the issue of defendant's guilt. We find no abuse of discretion in the trial court's limitation of the cross-examination of Officer Fron.

Defendant was allowed to cross-examine Officer Fron extensively with respect to his surveillance, lighting conditions, any possible obstructions, the officer's familiarity with the area under surveillance, whether the officer used binoculars during the surveillance, whether the officer was in uniform, and the distance of the nearest individual to the defendant both during surveillance and at the time of the arrest. Without pinpointing the exact surveillance location,

defendant was permitted to establish the officer's position sufficiently enough to allow the trial court to assess the officer's credibility and reliability. The defense presented no evidence that would illustrate that the roof of the auto would have blocked the officer's view. We conclude that the trial court properly granted the State a qualified privilege regarding the disclosure of the exact surveillance location of Officer Fron. *Criss*, 294 Ill. App. 3d at 281-82.

We find that the *Knight* case upon which defendant relies factually distinguishable from the case at bar. In *Knight*, this court found prejudicial error when the application of the privilege of nondisclosure severely hampered the defendant's ability to cross-examine the surveillance officer to cast doubt on his testimony. *Knight*, 323 Ill. App. 3d at 1128. However, the identity of the defendant was contested, and the police officer admitted that "from his observation of defendant he could not recall what type of jacket he was wearing." *Knight*, 323 Ill. App. 3d at 1120. In addition, a church pastor testified that the defendant had been helping unload the church van at the location where defendant was arrested and that she never saw defendant selling drugs. *Knight*, Ill. App. 3d at 1120. Defendant and defendant's girlfriend testified that another man known as "D.C." wore a jacket similar to defendant's jacket and was selling drugs in the area. *Knight*, 323 Ill. App. 3d at 1120-21. Furthermore, the officer testified that he saw the defendant take money in exchange for an object, but no money was recovered from the defendant during the custodial search or during the police station inventory of defendant's possessions immediately after defendant's arrest. *Knight*, 323 Ill. App. 3d at 1119-20.

Unlike the circumstances in *Knight*, identity was not at issue in this case. The testimony adduced at trial established that defendant was standing on a vacant lot yelling "blows" to passing

12

motorists and pedestrians, that a blue automobile arrived at the location, that after a short conversation with the driver of the blue automobile defendant relocated to a lone garbage can, removed a shiny item from a hidden bag, and walked back to the blue automobile. The evidence also established that the defendant was arrested only two to three minutes later, a custodial search revealed that defendant no longer possessed the shiny item on his person that he was observed with only moments prior, that the defendant was in possession of $74, and that the bag defendant was seen removing the shiny item from contained five more shiny items containing a substance that tested positive for heroin. Considering the public's interest in preserving the secrecy of the surveillance location that is used often to monitor drug activity in the area, and the relative insignificance of the exact point of surveillance in light of the specificity uncovered on cross-examination, we conclude that the trial court properly granted the State a qualified privilege regarding the disclosure of the exact surveillance location of Officer Fron.

Alternatively, defendant argues that the court erred by not conducting an *in camera* hearing outside the presence of defendant and his counsel to determine if the public interest in withholding the location of the surveillance point outweighed the defendant's need of the information to prepare his defense. Defendant argues that *in camera* proceedings are required upon the prosecution's invocation of the surveillance privilege. We disagree.

*Knight* requires that *in camera* proceedings be held outside the presence of defendant and his counsel only after a preliminary showing by defendant that the surveillance location would assist in his defense. In *Knight*, this court held that, "*Upon recognizing the need for disclosure* of surveillance points at trial," the trial court "should order an *in camera* hearing out of the presence

13

of the defendant and defense counsel." (Emphasis added.) *Knight*, 323 Ill. App. 3d at 1127. We find that the trial court complied with the direction of *Knight* by weighing the public's interest in nondisclosure of the surveillance with defendant's need for the information to develop his defense. The testimony of Officer Fron established that the surveillance point was used frequently to monitor drug activity in the area and that the surveillance point was located on private property. The trial court then allowed defense counsel to address the need for disclosure of the exact surveillance point. Defense counsel responded that he was not asking the officer to reveal his exact surveillance location but only asking the officer to place an "S" in an area somewhere on the drawing that defense counsel presented to the officer. After hearing argument from both parties, the court recognized law enforcement's need for nondisclosure of the surveillance location and the jeopardy of the lives of officers and private individuals who cooperate with law enforcement if the surveillance location was revealed. As a result, the trial court engaged in the balancing required by *Knight* and did not err in not ordering an *in camera* proceeding.

Defendant then argues that the trial court erred by failing to appoint new counsel to represent him on his posttrial ineffective assistance of counsel claim. "To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney committed such serious errors as to fall beyond an objective standard of reasonableness, and that, without those objectively unreasonable errors, there was a reasonable probability that his trial would have resulted differently." This is a two prong test. *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007), citing *Strickland v. Washington*, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). In *Strickland*, the United

States Supreme Court delineated the two-prong test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Our Illinois Supreme Court has stated that to demonstrate performance deficiency, a defendant must establish that counsel's performance was below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding[s] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

As noted, defendant gave defense counsel the name of defendant's coworker, but defense counsel failed to locate him and call him to testify.

Defendant cannot satisfy the second element of his ineffective assistance of counsel claim because he was not sufficiently prejudiced by his counsel's failure to secure the testimony of Phillip Baker. As noted, defendant testified that he was in the area where he was arrested because he was either coming from the garage where he worked or going to Phillip Baker's home to wake him so that they could open the garage for the day. The testimony of Phillip Baker would simply have established that defendant was in the same area that the officer testified he saw him selling narcotics. Because defendant was not prejudiced by counsel's failure to locate Phillip Baker or secure his testimony, the trial court did not err in failing to appoint new counsel to represent

15

defendant in his *pro se* posttrial motion. *Albanese*, 104 Ill. 2d at 525 (specifically authorizing Illinois courts to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice if that course is easier).

We nevertheless address defendant's claim that counsel's failure fell below an objective standard of reasonableness.

When determining the effectiveness of counsel we must look at his entire performance during trial from opening statement to closing argument. *People v. Gleason*, 240 Ill. App. 3d 249, 257 (1992). As the United States Supreme Court in *Strickland* cautioned, in reviewing an attorney's actions, courts should give deference to the attorney's decisions. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. 2065. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2064. A mistake in trial strategy or tactics, without more, does not amount to ineffective assistance of counsel. *Ward*, 371 Ill. App. 3d at 434. Counsel's trial strategy is "virtually unchallengeable." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994).

Defendant cites *People v. Krankel*, 102 Ill. 2d 181 (1984), to support his argument that defense counsel's actions fell below objective standards of reasonableness. In *Krankel*, defense counsel failed to contact an alibi witness or present an alibi defense at trial. *Krankel*, 102 Ill. 2d at 187-89. The parties agreed that the court should have appointed counsel to represent the defendant in his *pro se* posttrial challenge to his attorney's competence at trial. *Krankel*, 102 Ill. 2d at 187-89. Our Illinois Supreme Court remanded the case for a new hearing on the

16

defendant's posttrial motion with newly appointed counsel. *Krankel*, 102 Ill. 2d 189.

The following rule developed in interpreting *Krankel*. "New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003), citing *People v. Chapman*, 194 Ill. 2d 186 (2000); *People v. Bull*, 185 Ill. 2d 179 (1998); *People v. Munson*, 171 Ill. 2d 158 (1996); *People v. Nitz*, 143 Ill. 2d 82, 134 (1991) (and cases cited therein).

The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. *People v. Johnson*, 159 Ill. 2d 97 (1994). "During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Moore*, 207 Ill. 2d at 78. Trial counsel may simply answer questions posed by the trial court and explain the facts and circumstances surrounding the defendant's allegations. *Moore*, 207 Ill. 2d at 78. A brief discussion between the trial court and the defendant may be sufficient to examine whether the defendant's claims have merit. *Moore*, 207 Ill. 2d at 78. Moreover, the trial court can assess defendant's allegations of ineffective

17

assistance on its knowledge of counsel's performance at trial. *Moore*, 207 Ill. 2d at 79.

We earlier quoted the entire discussion of record concerning defendant's *pro se* posttrial motion. We find the trial court's examination of defendant's claim sufficient. The trial court asked defense counsel to explain why he was not able to secure the testimony of Phillip Baker. Defense counsel explained that the address that defendant gave him led counsel to a vacant lot. After visiting the vacant lot defense counsel searched the phone book and found a Phillip C. Baker that lived in the area. Defense counsel telephoned the number for Phillip C. Baker and was told that he had the wrong number. Defense counsel also sent an investigator to the scene. The trial court properly found defendant's *pro se* posttrial motion meritless after inquiring into the matter.

Furthermore, we cannot say that defense counsel's performance fell below objective standards of reasonableness. As noted, defense counsel was given a name and address for Phillip Baker. Defense counsel visited the address and discovered a vacant lot. After discovering that the address was a vacant lot, defense counsel attempted to call Phillip C. Baker and sent an investigator to the scene, but was unable to locate the witness. Defense counsel's efforts are indicative of due diligence in discharging his duties to the defendant and not indicative of an abandonment of defendant's case. Furthermore, the record reveals that defendant urged defense counsel to demand trial despite not having yet secured the testimony of Phillip Baker. Since counsel undertook to demand trial at defendant's request, defendant was not entitled to new counsel. *People v. Crane*, 145 Ill. 2d 520, 533 (1991) (holding that defendant was not entitled to new counsel because defense counsel presented the case in the manner which the defendant

18

requested).

Defendant also contends that the trial court erred by imposing a $20 fine for the Violent Crime Victims Assistance Fund. 725 ILCS 240/10(c)(2) (West 2004). We agree. The plain language of the statute states that this fine may be imposed only if no other fine is imposed. 725 ILCS 240/10(c)(2) (West 2004). Here, the court also imposed a controlled substance assessment. Therefore, because another fine was ordered in this case, the imposition of the Violent Crime Victims Assistance Fund penalty was improper.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County as modified by this opinion. The trial court did not err by limiting the cross-examination of Officer Fron by allowing the State to invoke the surveillance location privilege because the public interest in keeping the location secret outweighed the defendant's interest in disclosure to prepare his defense. The trial court did not err by not appointing new counsel to investigate defendant's posttrial *pro se* motion of ineffective assistance because defendant was not prejudiced by defense counsel's failure to secure the testimony of defendant's coworker nor did counsel's inability to locate the coworker fall below objective standards of reasonableness in discharging his duties to defendant. The trial court erred by imposing a $20 fine for the Violent Crime Victims Assistance Fund because the court properly imposed a controlled substance assessment.

Affirmed as modified.

McBRIDE, P.J. and GARCIA, J., concur.

19