# Illinois Official Reports

## Appellate Court

---

**In re Manuel M._, 2017 IL App (1st) 162381**

---

| | |
|---|---|
| Appellate Court Caption | *In re* MANUEL M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Manuel M., Respondent-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-2381 |
| Filed | February 10, 2017 |
| Rehearing denied | February 1, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-JD-855; the Hon. Patricia Mendoza, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier and Gavin J. Dow, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Cunningham and Rochford concurred in the judgment and opinion. |

¶ 1        The respondent, Manuel M., appeals from the trial court's judgment adjudicating him a delinquent minor by reason of his commission of two counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a) (West 2014)) and one count of unlawful possession of a firearm (UPF) (720 ILCS 5/24-3.1(a)(1) (West Supp. 2015)) and the resulting sentence of 18 months' probation and 30 days' commitment to the juvenile temporary detention center with the order of commitment stayed. For the reasons that follow, we reverse the respondent's delinquency adjudication and sentence and remand the matter for a new trial.

¶ 2        The respondent was arrested for reckless conduct after he was seen flashing gang signs at passing cars near Throop Park in Chicago. When the respondent was searched following his arrest, a pistol was found in his pants.

¶ 3        The State alleged in a petition for adjudication of wardship that the 16-year-old respondent committed two counts of AUUW and one count of UPF. The first AUUW count charged that the respondent knowingly carried a firearm when he was not on his own land, home, or fixed place of business and did not have a valid Firearm Owner's Identification (FOID) card. The second AUUW count alleged that the respondent, being under age 21 and not engaged in lawful activities under the Wildlife Code (520 ILCS 5/1.1 *et seq.* (West 2014)), carried a firearm on his person. The UPF count alleged that the respondent, while under age 18, knowingly possessed a firearm that could be concealed upon his person.

¶ 4        Prior to trial, the respondent filed a motion to quash his arrest and suppress evidence of the firearm recovered following that arrest. The following evidence was adduced at the hearing on the respondent's motion.

¶ 5        The respondent testified that, on April 11, 2016, at approximately 7:15 p.m., he was sitting with two other individuals in a park at 18th and Throop Streets (Throop Park) when a police officer approached him, searched his person, and recovered a pistol from his pants. The respondent denied that he had displayed gang signs at passing cars.

¶ 6        The State called Officer Kush, who testified that on the evening of April 11, 2016, he was assigned to observe Throop Park due to reports of gunfire on recent nights. He stated that he went to a location 1½ to 2 blocks from the park and, using binoculars, observed the respondent and two other individuals near the park entrance flashing gang signs at passing vehicles, causing the vehicles to swerve toward oncoming traffic or parked cars. According to Officer Kush, the group was endangering drivers and pedestrians. After observing the respondent and his companions for 15 to 20 minutes, Officer Kush drove to the park with other officers. Officer Kush testified that, upon arriving at the park, he arrested the respondent for reckless conduct, patted him down, and recovered a pistol from his pants.[1]

¶ 7        The trial court denied the defendant's motion to quash arrest and suppress evidence, finding that Officer Kush testified credibly and had discovered the pistol on the respondent's person as the result of a search incident to a legal arrest.

¶ 8        The case proceeded to trial. Officer Kush testified consistently with his testimony at the suppression hearing, adding that he recovered the firearm from the respondent who was on

---

[1]Officer Kush testified that the other individuals were also arrested, but the record contains no further information regarding either person.

"park property," and not engaged in activities under the Wildlife Code. Officer Kush also testified that the respondent was unable to present a valid FOID card. According to Officer Kush, he learned that the respondent was under age 18 when he processed him at the police station.

¶ 9    On cross-examination, defense counsel asked Officer Kush to disclose the exact location from which he observed the respondent and his two companions flashing gang signs at passing vehicles. Officer Kush stated that disclosing the location would endanger his life and the lives of every officer that uses the location. The prosecutor objected to defense counsel's question on the grounds that revealing the location would endanger officer safety. Following arguments on the objection, the trial court elected to conduct an *in camera* examination of Officer Kush. The transcript of that examination contained within the record reflects that the respondent and his attorney were excluded from the *in camera* examination of Officer Kush but the assistant State's Attorneys were present. After the trial judge examined the officer and ascertained the exact location from which he conducted his surveillance of the park, an assistant State's Attorney was permitted to ask the officer questions. Following the examination of Officer Kush, the assistant State's Attorney presented argument to the trial judge in further support of his objection to disclosure of the surveillance location.

¶ 10    When the trial resumed, defense counsel presented additional arguments addressed to the State's objection. However, there is no indication in the record that defense counsel was ever advised of the arguments made by the State during the *in camera* examination of Officer Kush. Following the arguments of counsel, and over defense counsel's objection, the trial judge ruled that she would not compel Officer Kush to disclose his "exact location" from which he conducted his surveillance of the park but would permit the defense to inquire regarding "distance, lighting, [and] everything else."

¶ 11    Cross-examination resumed, and Officer Kush testified that he observed the respondent from an outdoor location, elevated 10 to 15 feet, 1½ to 2 blocks north of the park. He stated that several buildings were situated between the park and the observation point but denied that his vision was obstructed. Officer Kush admitted that the police reports of the incident did not mention the fact that he conducted surveillance prior to arresting the respondent.

¶ 12    After Officer Kush testified, the State rested. The respondent then moved for a directed finding, which was denied. Thereafter, the respondent rested without presenting any witnesses.

¶ 13    Following closing arguments, the trial court found the respondent delinquent on all counts and merged both the AUUW count predicated upon his possession of a firearm while under age 21 and not engaged in lawful activities under the Wildlife Code and the UPF count into the AUUW count, which charged the respondent with possession of a firearm when he did not have a valid FOID card. In her oral findings, the trial judge stated that Officer Kush testified credibly and "[g]iven where he was observing from, his testimony makes perfect sense."

¶ 14    Following a dispositional hearing, the trial court adjudged the respondent to be a ward of the court and sentenced him to 18 months' probation and 30 days' commitment to the juvenile temporary detention center, with the order of commitment stayed. This appeal followed.

¶ 15    On appeal, the respondent first argues, and the State correctly concedes, that he was not proved delinquent beyond a reasonable doubt of AUUW predicated on not having been issued a valid FOID card. The offense of AUUW contemplates whether an individual has been issued a FOID card and not whether the individual has a FOID card "in his or her possession." *People v. Holmes*, 241 Ill. 2d 509, 522 (2011). Here, Officer Kush's testimony indicated that the

respondent did not present a FOID card following his arrest, but the State presented no evidence that the respondent had not been issued a FOID card. Consequently, we agree with the respondent, accept the State's concession, and reverse the respondent's delinquency adjudication and sentence for AUUW predicated on not having been issued a valid FOID card.

¶ 16     Among the respondent's additional arguments on appeal, he also contends that his constitutional right of confrontation was violated when his attorney was prevented from questioning Officer Kush as to the exact location from which he conducted his surveillance and that his constitutional rights to confrontation and to a public trial were violated when, during the *in camera* examination of Officer Kush from which both he and his attorney were excluded, the prosecutor was permitted to question Officer Kush and argue in support of the State's objection to disclosure of the surveillance location. We agree with both arguments.

¶ 17     The sixth amendment to the United States Constitution (U.S. Const., amend. VI), applicable to the states by the fourteenth amendment (U.S. Const., amend. XIV), and article I, section 8, of the Illinois Constitution (Ill. Const. 1970, art. I, § 8), guarantee the accused in a criminal prosecution the right to confront and cross-examine the witnesses against him. However, the right of cross-examination is not absolute. In the exercise of its discretion, a trial court may limit the scope of cross-examination, and its decision to do so will not be disturbed on appeal absent an abuse of that discretion. *People v. Enis*, 139 Ill. 2d 264, 295 (1990).

¶ 18     Illinois recognizes a qualified privilege from disclosing secret surveillance locations in a criminal proceeding against the target of the surveillance. *People v. Price*, 404 Ill. App. 3d 324, 330-31 (2010); *People v. Knight*, 323 Ill. App. 3d 1117, 1128 (2001); *People v. Criss*, 294 Ill. App. 3d 276, 281 (1998). Whether the privilege is applicable must be decided by the trial court on a case-by-case basis, balancing the public interest in keeping the location secret against the defendant's right to test the credibility of a witness by cross-examination. *Criss*, 294 Ill. App. 3d at 281.

¶ 19     When, as in this case, the State invokes the surveillance location privilege at trial, it bears the initial burden of demonstrating that the privilege should apply. *Price*, 404 Ill. App. 3d at 331. The State can satisfy its initial burden by establishing that the surveillance location was located on private property with the permission of the owner or in a useful location which would be compromised by disclosure. *Id.* at 332. Once the State has carried its burden, the defense can overcome the privilege by showing that the surveillance location is relevant to the defense or essential to the fair determination of the case. *Id.*

¶ 20     In making its determination of whether to apply the privilege and prevent the defense from inquiring into the exact location from which the surveillance was conducted, the trial court may conduct an *in camera* examination of the surveillance officer out of the presence of the defendant and his attorney. *Id.*; *Knight*, 323 Ill. App. 3d at 1127. Following such a hearing, the court should weigh the defendant's need for the information against the public's interest in nondisclosure. *Knight*, 323 Ill. App. 3d at 1127.

¶ 21     In sustaining the State's objection in this case and declining to require Officer Kush to reveal the exact location from which he observed the respondent flashing gang signs at passing vehicles, the trial judge ruled that defense counsel would be permitted to inquire into "distance, lighting, [and] everything else." We believe that, in arriving at its resolution of the issue, the trial court failed to give adequate consideration to the respondent's need to ascertain the exact location from which Officer Kush conducted his surveillance of Throop Park.

¶ 22    Cross-examination is the principal means by which the credibility of a witness is tested. Officer Kush was the only witness to testify for the State, and its case against the respondent rested entirely upon his testimony. The defense challenged the credibility of Officer Kush's testimony that he observed the respondent and his companions flashing gang signs at passing cars from a location more than one block away. Clearly, Officer Kush's ability to see Throop Park from his point of observation is relevant to the credibility of his testimony, and it was Officer Kush's observations from that point which supplied the probable cause for the respondent's arrest and subsequent search leading to the discovery of the pistol underlying the AUUW and UPF charges for which he was on trial. By sustaining the State's objection to defense counsel's inquiry as to the exact surveillance location, the trial court severely hampered the respondent's ability to test the credibility of the only witness against him on a material issue. As this court held in *Knight*, when the case against a defendant turns almost exclusively upon the uncorroborated testimony of the police officer who conducted the surveillance, "disclosure must almost always be ordered." *Id.* at 1128.

¶ 23    Based upon the foregoing analysis, we believe that the respondent was denied his right of effective cross-examination guaranteed by both the United States Constitution and the Constitution of Illinois when he was prevented from ascertaining the exact location from which Officer Kush conducted his surveillance. We find, therefore, that the trial court abused its discretion by sustaining the State's objection to the cross-examination of Officer Kush on that issue.

¶ 24    We also find that the respondent's constitutional rights of confrontation and to a public trial were violated when, in the absence of both him and his attorney, the prosecutor was permitted to question Officer Kush and present an *ex parte* argument in support of the State's objection to any inquiry into the exact location from which the officer conducted his surveillance.

¶ 25    In addition to guaranteeing the right of confrontation, the sixth amendment to the United States Constitution and article I, section 8, of the Illinois Constitution guarantee a criminal defendant the right to a public trial, including the right to appear and participate in person or by counsel at all stages of a proceeding which involve his substantial rights. *People v. Childs*, 159 Ill. 2d 217, 227 (1994). The denial of a defendant's right to a public trial constitutes a structural error and "necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *People v. Thompson*, 238 Ill. 2d 598, 609 (2010). Where structural error occurs, automatic reversal is required. *Id.* at 608. However, a defendant's absence from a proceeding only violates his constitutional rights if his absence rendered the proceeding unfair or if his absence resulted in the denial of an underlying substantial right. *People v. Bean*, 137 Ill. 2d 65, 81 (1990).

¶ 26    In *Knight*, the court held that, in balancing the public's interest in nondisclosure of a surveillance point against the need of the defendant for disclosure in order to defend himself, "the trial court should order an *in camera* hearing out of the presence of defendant and defense counsel" at which "the State witness must reveal the surveillance location from which the defendant was watched." *Knight*, 323 Ill. App. 3d at 1127; see also *Price*, 404 Ill. App. 3d at 332. The *Knight* court went on to state that, at the *in camera* hearing, the State must make a preliminary showing that disclosure of the surveillance location would harm the public's interest (*Knight*, 323 Ill. App. 3d at 1127), suggesting that the State is allowed to present an *ex parte* argument during the *in camera* hearing. In contrast, the *Price* court stated that the *in camera* examination of the surveillance officer should take place "outside the presence of

- 5 -

both the State and the defense." *Price*, 404 Ill. App. 3d at 332. We agree with the procedure enunciated in *Price*; the *in camera* examination should be conducted by the trial court outside the presence of both the State and the defense. We also believe that the trial court's *in camera* examination of the surveillance officer should be limited to a disclosure of the exact location from which the surveillance was conducted, nothing more. Any testimony or argument addressing the public interest to be protected by nondisclosure of the location should be made in open court.

¶ 27 Allowing the State to examine a witness in a proceeding outside the presence of the defendant and his attorney, as occurred in this case, violates both the defendant's right of confrontation and his right to a public trial as guaranteed by the United States Constitution and the Constitution of Illinois. Permitting the State to make an *ex parte* argument in support of an objection, as also occurred in this case, violates a defendant's constitutional right to a public trial.

¶ 28 The foregoing analysis leads us to conclude that the respondent's constitutional rights to effective cross-examination, confrontation, and to a public trial were violated, and we find no need, therefore, to address the respondent's other assignments of error. Consequently, we reverse the respondent's adjudication of delinquency and remand this case for a new trial. In doing so, we accept the State's concession that the trial evidence was insufficient to sustain the respondent's delinquency adjudication for AUUW predicated on not having been issued a valid FOID card. However, we find to no double jeopardy bar to a retrial on both the remaining AUUW count and the UPF count, as the evidence of record supports a finding of guilty on each of those charged offenses. See *People v. Olivera*, 164 Ill. 2d 382, 393 (1995).

¶ 29 Reversed and remanded.