2019 IL App (1st) 160718
No. 1-16-0718
Opinion filed June 20, 2019

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15 CR 9079 |
| MAURICE SANDERS, | ) ) | The Honorable Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1       After a bench trial, defendant Maurice Sanders was convicted of possession of a controlled substance, namely, heroin, and sentenced to five years with the Illinois Department of Corrections (IDOC).

¶ 2    On this appeal, defendant claims that the trial court erred in denying his pretrial motion for disclosure of the exact surveillance location of the officer who observed him during the offense. Defendant also challenges the imposition of various fines and fees. For the following reasons, we do not find persuasive his arguments regarding the surveillance location and, thus, affirm his conviction. However, with respect to the fines and fees, we remand to the circuit court for further proceedings consistent with the newly revised Illinois Supreme Court Rule 472(e) (eff. May 17, 2019), which we discuss further below.

¶ 3                                  BACKGROUND

¶ 4    Defendant was charged by information with a single count of possession of one gram or more of heroin with intent to deliver. After a bench trial, the trial court found him guilty of the lesser included offense of possession of a controlled substance.

¶ 5    Prior to trial, defendant moved for disclosure of the surveillance location of police officer Alan Rogers, who had observed defendant during the offense and who was the sole witness to testify at defendant's bench trial.

¶ 6    In response to the motion, the trial court conducted an *in camera* examination of Officer Rogers. The only individuals present during the

examination were the trial judge, the court reporter and Officer Rogers. The transcript, which was sealed, is a part of the appellate record.

¶ 7     After the *in camera* examination, the trial court stated on the record:

"THE COURT:  All right. The Court conducted an in-camera [*sic*] examination of the officer—one second.

Everyone must be seated.

All right. And given the testimony of the Officer during that examination, and in the interest of public safety, and the Officer's ability with respect to that location, the Court has determined that disclosing that location would not be appropriate; and therefore, the Motion to Disclose Surveillance Location is denied.

ASSISTANT PUBLIC DEFENDER:  Thank you, Judge.

THE COURT:  However, the transcript of the in-camera [*sic*] examination of the Officer, will be sealed, and made a part of the record, and shall not be opened or released without Order of Court."

The above record shows that defense counsel was present but did not object to the trial court's issuing its decision at this time and did not seek further argument in addition to defendant's written motion.

¶ 8     At trial, Officer Rogers testified that he had been a police officer for 15 years. On May 14, 2015, he and his fellow officers began a narcotics

investigation on the 1000 block of North Lawndale Avenue in Chicago, in which he was the surveillance officer. At 11:10 a.m., he observed defendant enter a nearby vacant lot, bend down by a pile of sticks and brush, and remove a piece of yellow and red paper from the pile. Officer Rogers next observed defendant remove a gold item from the paper and walk toward a woman standing on the sidewalk. Defendant and the woman spoke briefly, and defendant handed her the gold item in exchange for paper money.

¶ 9        Officer Rogers testified that, during the next five minutes, he observed defendant walking around, near the lot. Defendant was then approached by a man on a bicycle. After speaking with this man briefly, defendant returned to the vacant lot to retrieve a piece of yellow and red paper from the pile. Defendant removed a gold item from the paper and handed it to the man in exchange for paper money.

¶ 10       Officer Rogers testified that, based on his training and his 15 years of experience, he believed these exchanges "to be street level hand-to-hand narcotics transactions." During his surveillance, he kept in constant contact with the other officers through their police radios, "giving them a description of the hand-to-hands after they had occurred" and a description of defendant and his location. After Officer Rogers had radioed the other officers, he observed them approach and detain defendant. Rogers then left his surveillance location

4

and proceeded to the vacant lot. At the lot, he recovered a piece of red and yellow cardboard with a strip of gold tape that "contained six tinfoil packets of suspect heroin." Rogers also confirmed that the person who the officers had detained was the same person who he had observed engaging in hand-to-hand transactions. Officers later recovered $69 in cash from defendant during a custodial search.

¶ 11 Officer Rogers testified that it was a clear day, that it was not raining and that he used binoculars to aid his vision.

¶ 12 On cross-examination, Officer Rogers testified that he was no more than 75 feet away from defendant when he first observed him, or roughly three house lengths away. Over the State's objection, Rogers testified that he was "elevated." Rogers also testified that he was located "[w]est" of defendant and able to observe defendant from the side and "from multiple views." The block contains multiple vacant buildings, and the officers were watching the area because it was a known drug area, with drug sales occurring in nearby vacant buildings. Rogers' surveillance of defendant lasted 20 to 25 minutes. Rogers described to his fellow officers both the woman and the man who were involved in the two hand-to-hand transactions. However, Rogers was not able to observe the denomination of the paper money exchanged. There were no other people in the area during his surveillance. Later, when defendant was searched at the

5

police station and money was recovered, Rogers was present for that search. During cross-examination, the State raised a number of objections to the defense's questions, and every objection was overruled by the trial court.

¶ 13    On redirect, Officer Rogers testified that he did not observe anyone else on the street with defendant when defendant was detained and that he did not observe anyone else handle the red and yellow paper but defendant.

¶ 14    The parties stipulated that, if Monika Kinslow, a forensic chemist with the Illinois State Police Crime Lab, were called to testify, she would testify that she received the six packages recovered from the vacant lot, that she tested four of the six packages which totaled 1.2 grams in weight, that they tested positive for the presence of heroin, and that the total weight of the six packages recovered  was 1.8 grams.

¶ 15    The State rested and defendant moved for a directed finding, which was denied.  After closing arguments, the trial court found defendant guilty of the lesser included offense of possession of a controlled substance. Defendant filed a posttrial motion for a new trial claiming, among other things, that the trial court erred when it denied his pretrial motion for disclosure of the surveillance location.  The trial court denied the motion, stating, "I think I gave wide enough latitude with respect to questioning during trial."

¶ 16    During sentencing, the State observed that defendant had many prior convictions for possession of a controlled substance, and defense counsel spoke about defendant's close family ties and life-long problem with substance abuse. During allocution, defendant stated that he had been "sentenced plenty of times to the penitentiary" but had never received help there. He asked the trial court for treatment "to get back on track." After considering factors in aggravation and mitigation, the trial court sentenced defendant on February 11, 2016, to five years with IDOC, with a recommendation for drug treatment.

¶ 17    Defendant filed a motion to reconsider sentence, which the trial court denied, stating: "Given the extensive nature of the defendant's background, and although I did take into consideration the obvious need for treatment, the Court believes that the sentence in this case under these facts in this background is appropriate." This timely appeal followed.

¶ 18                                    ANALYSIS

¶ 19    Defendant claims that the trial court erred: (1) by denying his pretrial motion for disclosure of the surveillance location of the officer who observed him during the offense; and (2) by imposing certain fines and fees. For the following reasons, we do not find the first claim persuasive and affirm his conviction. However, with respect to the fines and fees, we remand to the circuit court for further proceedings consistent with the newly revised Illinois

Supreme Court Rule 472 (e) (eff. May 17, 2019), which we discuss further below.

¶ 20                              I. Surveillance Location

¶ 21        Defendant's first claim is that the trial court erred in denying his pretrial motion for disclosure of Officer Rogers' surveillance location.

¶ 22        As both sides correctly observe in their briefs to this court, our standard of review is whether the trial court abused its discretion. While a defendant has the right under the sixth amendment (U.S. Const., amend VI) to cross-examine the witnesses against him, the trial court does have the discretion to limit the scope of cross-examination and the court's decision to do so will not be disturbed on appeal absent an abuse of that discretion by the trial court. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 17; *People v. Palmer*, 2017 IL App (1st) 151253, ¶ 25; *People v. Jackson*, 2017 IL App (1st) 151779, ¶ 22.

¶ 23        As our supreme court has observed, "[t]he extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court." *People v. Stevens*, 2014 IL 116300, ¶ 16. An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009); *People v. Lewis*, 2019 IL App (1st) 160705, ¶ 28.

¶ 24        As both sides acknowledge, the Illinois appellate court has recognized a qualified privilege from disclosing secret surveillance locations in a criminal proceeding. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 18; *Jackson*, 2017 IL App (1st) 151779, ¶ 23. "This court has developed a consistent and long-standing body of law regarding the privilege." *Palmer*, 2017 IL App (1st) 151253, ¶ 22 (listing "numerous cases"). "Despite the plethora of [appellate court] cases recognizing the qualified surveillance privilege that has been decided by our court over the decades, our supreme court has not cast doubt on the continuing vitality of this body of law." *Palmer*, 2017 IL App (1st) 151253, ¶ 23.

¶ 25        On this appeal, defendant does not challenge the continued vitality of this privilege; rather, he argues that it is a qualified privilege and that, under the well-established parameters of this privilege, it should not apply in his case. *Palmer*, 2017 IL App (1st) 151253, ¶ 26 ("a qualified privilege"). Whether the privilege applies is determined "on a case-by-case basis, balancing the public interest in keeping the location secret against the defendant's right to test the credibility of a witness by cross-examination." *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 18; *Palmer*, 2017 IL App (1st) 151253, ¶ 26 (the privilege's application is "determined on a case-by-case basis, with the trial court balancing

the public interest in keeping the location secret against the defendant's interest in preparing a defense").

¶ 26 To determine whether the privilege applies in a particular case, the trial court may hold an *in camera* examination of the surveillance officer, out of the presence of both the State and the defense. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶¶ 20, 26; *People v. Price*, 404 Ill. App. 3d 324, 332 (2010) (the *in camera* examination should take place "outside the presence of both the State and the defense"). See also *Jackson*, 2017 IL App (1st) 151779, ¶¶ 35-38 (the trial court abused its discretion by allowing the State to appear and participate in the *in camera* proceeding and by issuing its ruling "while in the presence of only the State"). Following the *in camera* proceeding, the trial court must weigh the defendant's need for disclosure of the surveillance location against the public's interest in nondisclosure. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 20; *Palmer*, 2017 IL App (1st) 151253, ¶ 27; *People v. Flournoy*, 2016 IL App (1st) 142356, ¶ 35; *People v. Knight*, 323 Ill. App. 3d 1117. 1127 (2001). In the case at bar, the trial court followed the procedure set forth in our appellate cases, by first holding an *in camera* examination and then finding on the record that disclosure would not be appropriate in this particular case "in the interest of public safety, and the Officer's ability with respect to that

location." Based on our own extensive precedent, we cannot find error in the trial court's use of the *in camera* examination.

¶ 27 Defendant argues, based on *Jackson*, that after the *in camera* examination, the trial court should have asked defendant if he wanted to make further arguments, in addition to the written motion that he had already submitted which set forth his arguments. In *Jackson*, we found that the trial court erred by not allowing further argument after the *in camera* proceeding, stating that, once "the State sufficiently established its initial burden of proof, the trial court" erred when it "denied defendant's motion, without providing him the opportunity to show that the privilege should not apply." *Jackson*, 2017 IL App (1st) 151779, ¶¶ 37-38. We found that, "[r]egardless of whether the [trial] court considered defendant's interest," the trial court erred because "it never provided defendant the required opportunity to overcome the State's application of the privilege." *Jackson*, 2017 IL App (1st) 151779, ¶ 38.

¶ 28 However, in *Jackson*, the facts were completely different than in the case at bar. In *Jackson*, the trial court had permitted the State to participate in the *in camera* examination by asking questions, and thereby support and, in essence, argue its case for nondisclosure. *Jackson*, 2017 IL App (1st) 151779, ¶ 4. Thus, we found that the trial court erred by not providing the defense with the same opportunity. *Jackson*, 2017 IL App (1st) 151779, ¶¶ 35, 37-38. We stated

11

"that either both parties or neither party" should be allowed to attend the *in camera* proceeding. *Jackson*, 2017 IL App (1st) 151779, ¶ 35. In the case at bar, neither party was allowed to attend, so there was no error. In a case where neither party was allowed to attend, it is not necessary for the trial court to *sua sponte* inquire whether the State or the defense wants to supplement their original motion or objection after the hearing, because neither party gained additional information from the hearing.

¶ 29 Next, we consider whether the parties satisfied their respective burdens with respect to the privilege.

¶ 30 "Where, as here, the State invokes the surveillance location privilege at trial, it bears the initial burden of proof in demonstrating that the privilege should apply." *Palmer*, 2017 IL App (1st) 151253, ¶ 27; *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 27; *Jackson*, 2017 IL App (1st) 151779, ¶ 25. The State may satisfy this initial burden "by presenting evidence that the surveillance location was either (1) on private property with the permission of the owner or (2) in a useful location, the utility of which would be compromised by disclosure." *Palmer*, 2017 IL App (1st) 151253, ¶ 27; *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 19; *Jackson*, 2017 IL App (1st) 151779, ¶ 25; *Price*, 404 Ill. App. 3d at 332.

¶ 31    In the case at bar, the record before us shows that the State satisfied its burden. Officer Rogers testified at trial that this particular city block contains multiple vacant buildings and that the police were watching this area because it is a known drug-trafficking area, with drug sales regularly occurring there. Thus, the officer's testimony established the need for an elevated and undisclosed vantage point from which to observe a known drug-trafficking area.

¶ 32    Once the State has carried its initial burden, the burden switches to the defense to show "that the surveillance location is relevant to the defense or essential to the fair determination of the case." *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 19; *Palmer*, 2017 IL App (1st) 151253, ¶ 28; *Jackson*, 2017 IL App (1st) 151779, ¶ 26; *Price*, 404 Ill. App. 3d at 332.

¶ 33    In the case at bar, defendant received a great deal of information regarding the surveillance location from the officer's trial testimony, and defendant does not identify what arguments he could have made, but did not, because he lacked certain information. He does not specify what facts about the location that he needed to know, but did not have.

¶ 34    The officer was never asked at trial, by either party, whether his view was obstructed in any way. Since the officer was never asked this question, we do not know if the State would have objected to this question or if the trial court

would have sustained the objection. Thus, whether the officer's view was or was not obstructed is simply not an issue on this appeal.

¶ 35    We do know from the trial record, and defendant knew as well: that the officer used a pair of binoculars to aid his vision; that the day was clear and not raining; that the building in question was 75 feet or three building-lengths away; that the vantage point was both elevated and west of defendant; that the officer was able to view defendant from the side and from multiple views; that the officer was able to observe two hand-to-hand transactions and the paper currency exchanged, but not the specific denominations of the currency; that he could observe the color of the paper that defendant removed from the pile of brush and the color of the foil packages; and that he observed defendant's detention by other officers before exiting his surveillance location.

¶ 36    Given the amount of detail about the location provided by the officer at trial, its fairly close proximity especially in light of the officer's use of binoculars, and defendant's failure to identify additional facts that he needed or arguments that he could not make, we cannot find that the trial court abused its discretion in applying the qualified privilege to the facts in this particular case.

¶ 37    In support, defendant relies primarily on two recent cases from this court: *In re Manuel M.*, 2017 IL App (1st) 162381, and *Palmer*, 2017 IL App (1st) 151253. In both cases, this court found that, when a case against a defendant

turns almost exclusively upon the "uncorroborated" surveillance testimony of a police officer, disclosure of the surveillance location " 'must almost always be ordered.' " *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 22 (quoting *Knight*, 323 Ill. App. 3d at 1128); *Palmer*, 2017 IL App (1st) 151253, ¶ 26 (quoting similar language from *Knight*). However, the key words in that quote are "uncorroborated" and " 'almost.' " As we explain below, the instant case is distinguishable from both cases.

¶ 38      The instant case is distinguishable in several significant respects from *In re Manuel M.*, 2017 IL App (1st) 162381, in which this court found that a minor respondent's confrontation rights were violated and reversed.

¶ 39      First, in the *Manuel* case, this court found that the minor respondent's confrontation rights were violated both because (1) the trial court allowed the State to attend the *in camera* proceeding, examine the witness and make *ex parte* arguments against nondisclosure of the surveillance location, while excluding the defense from the same information and the same opportunity; and because (2) the trial court denied disclosure of the surveillance location. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶¶ 27-28. By contrast, in the case at bar, the State, as well as the defense, were excluded from the *in camera* proceeding.

¶ 40    Second, in the *Manuel* case, the location was 1½ to 2 blocks away, several buildings were "situated between" the surveillance location and the park where the offense occurred, and the officer admitted that the police reports of the incident failed to mention that he had conducted any surveillance prior to the minor respondent's arrest. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 10. By contrast, in the case at bar, the distance was 75 feet or three-building-lengths away, there is no suggestion that there were buildings between the officer and the offense location, and no suggestion that police reports failed to support the officer's trial testimony.

¶ 41    Third, the *Manuel* officer's surveillance testimony was completely uncorroborated by any physical evidence or other testimony. The *Manuel* officer testified that, prior to arresting the minor respondent for reckless conduct, he observed, from his surveillance location, that the minor respondent was flashing gang signs at passing vehicles, causing the vehicles to swerve toward oncoming traffic or parked vehicles. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 6. No physical evidence or other testimony corroborated these surveillance observations. By contrast, in the case at bar, the officer's surveillance testimony was corroborated by the physical evidence, namely, the subsequent seizure of what he had observed: gold tinfoil packets attached to a

red and yellow paper or cardboard seized from the vacant lot, as well as the paper currency seized from defendant.

¶ 42 Defendant also cites in support *Palmer*, 2017 IL App (1st) 151253, in which this court also reversed. In the *Palmer* case, the surveillance officer was not elevated, but kneeling at street-level among bushes and weeds in a vacant lot, 120 feet away from defendant, at night. *Palmer*, 2017 IL App (1st) 151253, ¶¶ 4, 8, 10-13. On cross, the defense in *Palmer* questioned how it was possible that the same vegetation, which the officer claimed concealed him, did not also obscure his view. *Palmer*, 2017 IL App (1st) 151253, ¶ 12. In closing, the defense argued that the officer's ability to observe the defendant was "questionable because 'there was vegetation in the way.' " *Palmer*, 2017 IL App (1st) 151253, ¶ 16. In addition, there were questions about the physical evidence: the currency seized from the *Palmer* defendant after the hand-to-hand transactions was not inventoried; and the narcotics dropped by the defendant were assigned four different inventory numbers, with only one of the numbers being "assigned to" the defendant. *Palmer*, 2017 IL App (1st) 151253, ¶¶ 7, 9. As a result, the defense argued that it needed the exact surveillance location and, based on the facts in that case, this court agreed. *Palmer*, 2017 IL App (1st) 151253, ¶ 35. By contrast, in the case at bar, the officer was elevated, and no suggestion has been made that his view was obstructed in any way. See

*Palmer*, 2017 IL App (1st) 151253, ¶ 26 ("If there is no question about a surveillance officer's ability to observe *** disclosure would not be required."); *Jackson*, 2017 IL App (1st) 151779, ¶ 24 (same). Thus, the facts of *Palmer* are also distinguishable from the case at bar.

¶ 43        We find that the facts of our case are closer to the facts of *People v. Bell*, 373 Ill. App. 3d 811 (2007), and *People v. Quinn*, 332 Ill. App. 3d 40 (2002), in which this court found no abuse of discretion in the trial court's application of the surveillance location privilege.  In *Bell* and *Quinn*, this court stressed that the trial court had permitted the defense extensive latitude on cross-examination to explore the officer's "credibility and reliability."  *Bell*, 373 Ill. App. 3d at 819 (the defense was permitted to cross-examine "extensively"); *Quinn*, 332 Ill. App. 3d at 44 (the defense was "allowed to cross-examine [the officer] extensively with respect to his surveillance"). For example, in *Bell*, the direct and cross examinations of the officer established that he was conducting surveillance of a vacant lot, in a known narcotics-trafficking area, from an elevated position, 60 to 90 feet away, with a southwest view of the lot; that he used binoculars under clear weather conditions; that he observed the defendant engage in a hand-to-hand transaction, exchanging paper money for a shiny item that came from a brown paper bag; and that the police later recovered the bag, which contained tinfoil packets of heroin, thereby corroborating the officer's

surveillance observations with physical evidence. *Bell*, 373 Ill. App. 3d at 813-15.  Similarly, in the case at bar, the direct and cross examinations of the officer established that he was conducting surveillance of a vacant lot, in a known narcotics-trafficking area, from an elevated position, 75 feet away and west of defendant; that he used binoculars under clear weather conditions; that he observed defendant engage in hand-to-hand transactions, exchanging gold items for paper currency that came from a yellow and red paper; and that the police later retrieved the yellow and red paper with a strip of gold tape that contained six tinfoil packets of heroin.

¶ 44        Similarly, in *Quinn*, the officer, using binoculars, observed the defendant, from 75 to 100 feet away, engaging in several hand-to-hand narcotics transactions in a vacant lot, from which the observed narcotics were later recovered.  *Quinn*, 332 Ill. App. 3d at 42-43.

¶ 45        In the instant case, as in those cases, defense counsel was allowed considerable latitude in cross-examining the surveillance officer in order to establish the relevant facts, and defendant does not point on appeal to any particular questions on cross that were objected to and sustained, other than for the exact street address where the officer was located. *Bell*, 373 Ill. App. 3d at 819 ("Without pinpointing the exact surveillance location, defendant was permitted to establish the officer's position sufficiently enough to allow the trial

court to assess the officer's credibility and reliablity."); *Quinn*, 332 Ill. App. 3d at 45 ("defendant was allowed to extensively cross-examine [the officer] and pinpoint his surveillance location sufficiently enough to allow the trial court to evaluate his testimony without revealing the exact surveillance location"). In fact, the State made a number of objections during defendant's cross-examination of the surveillance officer and the trial court overruled every one. In addition, no suggestion was raised that the officer's view was obstructed, as in *Palmer*, or that physical evidence or police reports failed to corroborate his trial testimony or that the State engaged in *ex parte* argument, as in *Manuel*. See *Palmer*, 2017 IL App (1st) 151253, ¶ 35 (this court reversed "so that [the defendant] could test his claim that the vegetation that concealed [the officer's] presence in a vacant lot did not also impair his ability to observe [the defendant's] conduct"); *Manuel*, 2017 IL App (1st) 162381, ¶¶ 11, 22, 27.

¶ 46        Thus, we cannot find that the trial court abused its discretion in applying the qualified surveillance location privilege to the particular facts of this case.

¶ 47                                II. Fines and Fees

¶ 48        Next, defendant challenges the trial court's assessment of certain fines and fees.

¶ 49        We observe that the State concedes that the following assessments should be offset against defendant's *per diem* credit:  (1) the $50 Court System fee; and

(2) the $15 State Police Operations fee. The State also concedes that two assessments should be vacated: (1) the $5 Electronic Citation Fee; and (2) the $100 Trauma Center Fund charge.

¶ 50 In his reply brief, defendant acknowledges that the subsequently decided Illinois Supreme Court case of *People v. Clark*, 2018 IL 122495, is controlling with respect to several of his earlier arguments. Defendant filed his initial brief in this appeal on June 21, 2018, and our supreme court decided *Clark*, on December 28, 2018. *Clark* addressed several issues that defendant had previously raised.

¶ 51 Defendant's reply brief acknowledges that *Clark* is controlling, and not in his favor, with respect to the following assessments: (1) $190 Felony Complaint Filed (Clerk) fee; (2) $15 Automation (Clerk) fee; (3) $15 Document Storage (Clerk) fee; (4) $2 Public Defender Records Automation fee; and (5) $2 State's Attorney Records Automation fee.

¶ 52 In his reply brief, defendant further acknowledges that this court has already found that the $25 Court Services (Sheriff) fee is a fee not subject to an offset—a finding that we have made repeatedly. *People v. Braden*, 2018 IL App (1st) 152295, ¶¶ 47-48; *People v. Smith*, 2018 IL App (1st) 151402, ¶ 15; *People v. Brown*, 2017 IL App (1st) 150146, ¶ 39; *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006). However, he urges us to abandon our precedent.

¶ 53       With respect to these fines-and-fees issues, we remand to the circuit court for further proceedings consistent with the newly revised Illinois Supreme Court Rule 472(e) (eff. May 17, 2019). The new rule provides that, "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors" regarding the imposition or calculation of fines, fees, assessments or costs "for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion" regarding such fines, fees, assessments or costs. Ill. S. Ct. R. 472(e) (eff. May 17, 2019). The rule further provides that "the circuit court retains jurisdiction to correct" any alleged errors regarding the imposition of fines and fees "at any time following judgment and after notice to the parties." lll. S. Ct. R. 472(a) (eff. May 17, 2019). "Where a circuit court's judgment pursuant to this rule is entered more than 30 days after the final judgment, the judgment constitutes a final judgment on a justiciable matter and is subject to appeal" as its own final judgment. Ill. S. Ct. R. 472(b) (eff. May 17, 2019). Thus, we remand to the circuit court for further proceedings consistent with Illinois Supreme Court Rule 472 (eff. May 17, 2019).

¶ 54                                    CONCLUSION

¶ 55       For the foregoing reasons, we do not find persuasive defendant's arguments concerning the trial court's application of the surveillance location

22

privilege and, thus, affirm defendant's conviction. However, for the reasons already explained above, we remand to the circuit court for further proceedings consistent with Illinois Supreme Court Rule 472 (eff. May 17, 2019).

¶ 56       Affirmed in part; remanded for further proceedings.