2020 IL App (1st) 170243-U

FIRST DISTRICT
SECOND DIVISION
March 3, 2020

No. 1-17-0243

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 CR 11262 |
| | ) | |
| PIOTR TOPOR, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's conviction affirmed because the evidence was not closely balanced. Pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019), we remand this cause to the circuit court to allow defendant to file a motion addressing the alleged errors in fines, fees, and costs.

¶ 2   Following a bench trial, defendant Piotr Topor was convicted of one count of aggravated discharge of a firearm and sentenced to two years' probation. Defendant appeals, arguing his sixth amendment right to confront witnesses was violated because the individual who performed the analysis of his gunshot residue samples did not testify at trial, but his conclusions were presented through the testimony of an expert witness. Defendant also argues that the fines, fees, and costs

order should be corrected to vacate the $5 electronic citation fee and reflect four days of pre-sentencing credit. For the following reasons, we affirm defendant's conviction and remand to the circuit court of Cook County to allow defendant to file a motion addressing the assessed fines, fees, and costs pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019).

¶ 3                                                    BACKGROUND

¶ 4            At trial, Dwight Johnson testified[1] that on July 1, 2015, he lived on the fourth floor of a multiple-floor building located at 2158 West 21st Street in Chicago. He rented his apartment from defendant, who owned and lived in the building. Defendant was the only other person who had keys to Johnson's apartment. Johnson and defendant had "kind of [a] rocky history" and had prior "run-ins" about "[l]ights being cut off, water being cut off, my things being taken from me."

¶ 5            When Johnson arrived at his apartment on July 1 at about 11:15 a.m., he discovered that his mattress and bedframe were missing. Johnson looked for the items in the hallway because defendant "took stuff from before and he put them in the hallway." His items were not there, so Johnson started walking down the building's back staircase and when he reached the landing separating the first floor from the second, he saw defendant at the bottom of the staircase. Johnson did not see anyone else around. He asked defendant, "where my bed was." Defendant did not respond. Johnson continued, "you can't be constantly taking people's stuff. I'm going to call the cops on you." Johnson testified that defendant then "shot at me. [he] raised up his arm and shot at me." He heard defendant fire a single shot.

¶ 6            Johnson ran away to the back of the building and called 911.[2] Defendant did not chase him.

---

[1]At the time of trial, Johnson had a "warrant out" for his failure to appear in court on this case and had been evicted from his apartment due to nonpayment of rent.

[2]Johnson's 911 tape was played during trial and admitted into evidence.

(R. L-35) When Johnson returned to the spot where defendant shot at him, he saw a bullet hole in the wall of the stairwell. Johnson had not seen the bullet hole before.

¶ 7　　Chicago Police Officer Ruben Ramirez testified that when he and his partner arrived at the scene at about 11:20 or 11:30 a.m., Johnson "was waving to us." The officers spoke with Johnson, who told them what happened. Ramirez saw the building's door open, and defendant was standing inside the doorway. Ramirez knew defendant because they had met before that day.

¶ 8　　The police arrested defendant and administered a gunshot residue collection kit at the police station at 5:40 p.m., collecting samples from defendant's hands. The "flattened out and kind of distorted" bullet lodged into the stairwell wall at the first-floor landing was photographed, recovered, and inventoried. No gun was recovered.

¶ 9　　Scott Rochowicz, a forensic scientist with the Illinois State Police's Forensic Science Center, was proffered as an expert in the areas of microscopy and trace chemistry without objection. Rochowicz explained "the 'peer review process,' [which] is a process by which another qualified examiner will review the report and notes of an analyst who has recently completed a case." The "peer review process" is a standard procedure for every case completed in the laboratory's microscopy and trace chemistry section.

¶ 10　　Rochowicz testified that Robert Burke, who had retired from the Illinois State Police, performed the analysis of the gunshot residue collection kit administered to defendant and drafted the laboratory report documenting his conclusions. Rochowicz conducted the "peer review" and did not personally perform the analysis of defendant's gunshot residue samples. As part of the "peer review process," he "reviewed the report and notes to ensure that *** [Burke] actually followed our procedure manual in conducting his tests and *** that the notes can validate the conclusions expressed in the report." Rochowicz testified that Burke found that defendant's right

hand tested positive for gunshot residue and that Burke's "conclusions were that [defendant] either discharged a firearm, was in close proximity to a firearm that was discharged, or contacted a PGSR-related item with his right hand." Rochowicz reviewed Burke's notes and "agree[d] with his conclusions."

¶ 11 Defendant confirmed that he was Johnson's landlord and lived in the first-floor apartment at the back of the building. He testified that he did not own a gun and nobody loaned him one. On July 1, defendant was in his apartment, but did not see Johnson inside the building or on the landing outside his apartment door. He denied threatening or firing a gun at Johnson. Defendant did not like Johnson, but also denied ever going into his apartment and taking anything from it. Defendant admitted that "he never [saw]" the bullet hole in the wall before that day, but saw it a few days later.

¶ 12 The trial court found defendant guilty of aggravated discharge of a firearm and sentenced him to two years' probation.

¶ 13 ANALYSIS

¶ 14 Defendant first argues that his sixth amendment right to confront witnesses under *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny was violated because Rochowicz, and not Burke, testified about Burke's report and conclusions from his analysis of defendant's gunshot residue samples. Defendant claims that "the content of Burke's notes and report constituted inadmissible testimonial hearsay," because he had no opportunity to cross-examine Burke.

¶ 15 Defendant concedes that he has forfeited review of this claim because defense counsel did not object to Rochowicz's testimony and no posttrial motion was filed, but urges review under the plain error doctrine, or, alternatively, as a matter of ineffective assistance of counsel for failing to properly preserve this issue. Specifically, defendant argues that the alleged clear and obvious error

is reviewable because the evidence was closely balanced, and the error affected his "substantial rights and the fairness of the trial." See *People v. Belknap*, 2014 IL 117094, ¶ 48. The initial step in a plain error analysis is to determine "whether the claim presented on review actually amounts to a 'clear or obvious error' at all." *People v. Harvey*, 2018 IL 122325, ¶ 15.

¶ 16    The sixth amendment of the United States Constitution (U.S. Const., amend VI) and article 1, section 8 of the Illinois constitution (Ill. Const. 1970, art. I, § 8) guarantee a defendant the right to confront the witnesses against him. *People v. Sanders*, 2019 IL App (1st) 160718, ¶ 22; *People v. Whitfield*, 2014 IL App (1st) 123135, ¶ 25. In *Crawford*, 541 U.S. 36, 68 (2004), the Supreme Court held that "[w]here testimonial evidence is at issue *** the sixth amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Whether a defendant's sixth amendment right of confrontation was violated raises a question of law that we review *de novo*. *People v. Barner*, 2015 IL 116949, ¶ 39.

¶ 17    Established case law supports defendant's claim that his sixth amendment confrontation right was violated. *People v. Lewis*, 2019 IL App (1st) 160864, ¶¶ 33-39 (and cases cited therein). Burke performed the gunshot residue analysis and prepared the forensic report documenting his conclusions, but defendant had no opportunity to cross-examine him because he did not testify at trial. Rochowicz, who did not personally test defendant's gunshot residue samples, testified without limitation about his review of *Burke's* notes, report, and conclusions and that he "agree[d] with his conclusions." *Id.* ¶ 45. Burke's conclusions in his forensic report relayed through Rochowicz's "surrogate testimony" was offered to prove the truth of the matter asserted; defendant's right hand tested positive for gunshot residue. Because Burke prepared his report after defendant's arrest and "for the primary purpose of obtaining evidence to be used against [him] to prove his guilt at trial," the report is testimonial in nature and its erroneous admission through

Rochowicz's testimony violated defendant's right to confrontation. *Id.* ¶¶ 43,44; *People v. Barner*, 2015 IL 116949, ¶ 60; *People v. Leach*, 2012 IL 111534, ¶¶ 120, 122.

¶ 18    Although a clear and obvious error occurred at trial, defendant has failed to meet his burden of establishing plain error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (defendant's failure to meet his burden of persuasion requires the procedural default to be honored). To begin with, this court has held that "*Crawford* errors do not rise to the level" of structural errors. *People v. Lewis*, 2019 IL App (1st) 1600864, ¶ 52; see *People v. Beck*, 2019 IL App (1st) 161626, ¶ 29; *People v. Cox*, 2017 IL App (1st) 151536, ¶ 87. "Thus, admission of hearsay evidence that violates *Crawford* is 'plain error' only where the evidence is closely balanced." *Lewis*, 2019 IL App (1st) 160864, ¶ 53 (discussing *People v. Patterson*, 217 Ill. 2d 207, 424-25 (2005)).

¶ 19    In this case, there is no plain error because after applying a "commonsense, contextual analysis of the totality of the evidence," we conclude that the evidence in this case was not closely balanced. *People v. Belknap*, 2014 IL 117094, ¶¶ 49, 52. The trial judge found Johnson's testimony credible, the physical evidence of the single bullet lodged in the stairwell wall of the first floor landing, the photographs, and the recorded 911 call corroborated Johnson's testimony, and defendant admitted that he had not seen the bullet hole in the stairwell wall before that day. See *Samour, Inc. v. Board of Election of Commissioners of City of Chicago*, 224 Ill. 2d 530, 548 (2007) (this court will not substitute our "judgment on credibility matters because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses.") Even excluding Rochowicz's improper testimony, the other evidence at trial establishing defendant's guilt of aggravated discharge of a firearm was not "so closely balanced that the error alone severely threatened to tip the scales of justice against him." *People v. Herron*, 215 Ill. 2d 167, 187 (2005). For that same reason, we decline to address defendant's ineffective assistance of counsel claim.

*People v. White*, 2011 IL 109689, ¶¶ 133, 134; *People v. Glasper*, 234 Ill. 2d 173, 215-26 (2009); *People v. Moon*, 2019 IL App (1st) 161573, ¶ 47; *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 59.

¶ 20      Defendant also argues that the assessed fines, fees, and costs are incorrect. He acknowledged in his reply brief, and we agree, that under Illinois Supreme Court Rule 472(e), Ill. S. Ct. R. 472(e), (eff. May 17, 2019), remand of this case to the circuit court of Cook County is proper "to allow [defendant] to file a motion pursuant to this rule" raising the alleged errors in the fines, fees, and costs imposed.

¶ 21                                CONCLUSION

¶ 22      For the reasons stated, we affirm defendant's conviction for aggravated discharge of a firearm and remand the cause in accordance with Illinois Supreme Court Rule 472(e) (eff. May 17, 2019).

¶ 23      Affirmed and remanded.