2020 IL App (1st) 180533-U

No. 1-18-0533

Order filed March 13, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 60033 |
| | ) | |
| DAVID MILES, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for theft where the evidence presented was sufficient to sustain his conviction. Pursuant to Illinois Supreme Court Rule 472(e), we remand the matter to the trial court so the State can raise the purported error in the written sentencing judgment.

¶ 2 Following a bench trial, defendant David Miles was found guilty of theft (720 ILCS 5/16-1(a)(1), (b)(4) (West 2016)) and sentenced to a four-and-a-half-year prison term.[1] Defendant appeals, arguing the State failed to prove his guilt beyond a reasonable doubt. The State asks that we order the *mittimus* corrected to reflect the correct sentence. We affirm, but remand the matter to the trial court pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019) so the State can file a motion to correct the *mittimus*.

¶ 3 The State charged defendant by information with robbery (720 ILCS 5/18-1(a) (West 2016)) and unlawful restraint (720 ILCS 5/10-3(a) (West 2016)). The State alleged that, on November 15, 2016, defendant took a cell phone from the person or presence of William Frye, who was 60 years of age or older, by the use of force or the threat of force, and, in doing so, detained Frye without legal authority. The case proceeded to a bench trial, at which the following evidence was presented.

¶ 4 Frye, who was 86 years old at the time of trial, testified that, on November 15, 2016, he was at a gas station on the 7500 block of South Stony Island Avenue in Chicago. There, Frye made a call on his cell phone. Defendant, who Frye identified in open court, approached Frye and asked for money. Frye responded he did not have any money. Defendant asked Frye for a ride and to use his cell phone. Frye told defendant "no." At the time, the gas station was well-lit, and Frye had a good opportunity to view defendant's face.

¶ 5 Frye left the gas station, drove to the Jewel store across the street, and made a purchase. As he left the store, defendant approached him again. Frye had a "close-up view" of defendant and

---

[1] The trial court's oral pronouncement of sentence was "four years, six months," but the written sentencing order reflects a sentence of four years in prison.

recognized him as the same person who had approached him at the gas station. Frye gave defendant a dollar but told him he could not give him a ride. Defendant grabbed Frye "like he was thankful and laughed, and he sort of pushed [Frye] back." When asked if defendant did anything other than grabbing him, Frye responded, "Well, he just took – apparently he took my phone out of my pocket which was hanging out of my jacket pocket and ran." Frye did not give defendant permission to take his cell phone.

¶ 6     Frye testified that, before defendant grabbed him, his cell phone was "just hanging out" of his jacket pocket. After defendant ran off, Frye got into his car and drove home. Frye did not notice his phone was missing until he got home, "about five minutes" after leaving Jewel. Frye called his son, who was a Chicago police officer, to tell him "someone had taken [his] phone." Frye's son told him he would take care of it. Frye never saw the phone again.

¶ 7     On December 19, 2016, Frye met with Chicago police detectives while he was in the hospital after suffering a heart attack. He viewed a photographic array and identified defendant as the person "who pulled [him] and took [his] phone."

¶ 8     Officer Tajuana Hurt testified on behalf of defendant. On November 23, 2016, eight days after the offense, she prepared the original incident report relating to this case. Though she was not certain, Hurt believed she spoke to Frye's son to obtain the information contained in the report.

¶ 9     The trial court found defendant guilty of theft (720 ILCS 5/16-1(a)(1), (b)(4) (West 2016)) as a lesser-included offense of robbery and not guilty of unlawful restraint. In doing so, the court noted it found Frye's testimony credible both as to his explanation of the events and his identification of defendant. The court found defendant "distracted [Frye] by this fake hug for the gift of a dollar and used that opportunity to lift [Frye's] cell phone."

¶ 10    Defendant filed a posttrial motion, which the trial court denied. In its oral pronouncement of defendant's sentence, the court stated it was imposing a term of four-and-a-half years in prison, to be followed by one year of mandatory supervised release (MSR). The written sentencing order reflects a sentence of four years in prison, to be followed by one year of MSR.

¶ 11    Defendant filed a motion to reconsider sentence, which the trial court denied. This appeal followed.

¶ 12    On appeal, defendant argues the State failed to prove his guilt beyond a reasonable doubt. Specifically, he contends the evidence at trial provided no basis for the conclusion that the phone was stolen as opposed to dropped or misplaced and, even assuming the phone was stolen, no evidence was presented to support the conclusion that defendant took it.

¶ 13    When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). In doing so, the reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee reasonableness of the decision. *Id.* However, the trier of fact need not disregard inferences which normally flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). "A criminal conviction will not be set aside unless

the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 14    A person's guilt may be established solely by circumstantial evidence as long as the elements of the crime have been proven beyond a reasonable doubt. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). " 'The trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt.' " *Id.* (quoting *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). Additionally, "the testimony of a single witness is sufficient to sustain a conviction if the testimony is positive and credible." *People v. Harris*, 2018 IL 121932, ¶ 27.

¶ 15    As relevant in this case, to sustain defendant's conviction for theft, the State was required to prove beyond a reasonable doubt that he knowingly obtained or exerted unauthorized control over Frye's cell phone by taking it from his person. 720 ILCS 5/16-1(a)(1), (b)(4) (West 2016).

¶ 16    Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, we find a rational trier of fact could conclude defendant committed the offense of theft. The evidence established that, on November 15, 2016, Frye was at a gas station when defendant approached him, asked him for money, a ride, and to use his cell phone, which Frye used while at the gas station. According to Frye, the gas station was well lit and he had a good opportunity to view defendant. Frye denied defendant's requests and drove across the street to Jewel, entered the store, and made a purchase.

¶ 17    Frye left Jewel, and defendant again approached him asking for money and a ride to Paxton Avenue. At the time, he had a "close up" view of defendant and recognized him as the person who had approached him at the gas station. Frye again denied defendant's request for a ride but gave

defendant a dollar. Defendant then grabbed Frye by the shoulders, pushed Frye back, and then ran away laughing. Before defendant grabbed him, Frye's cell phone was "hanging out of" his jacket pocket. Frye left Jewel and, when he arrived home five minutes later, he discovered his phone was no longer in his pocket. From this evidence, the trial court drew the reasonable inference that defendant took Frye's cell phone from Frye's pocket under the guise of a fake hug for the gift of a dollar. We find this evidence was not so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt.

¶ 18    Defendant nevertheless argues the evidence presented at trial provided absolutely no basis for the conclusion that the cell phone was stolen as opposed to lost or misplaced. Defendant points to the absence of testimony from Frye that he saw defendant reach into his pocket or take his cell phone and the fact Frye was apparently unaware his cell phone was being taken during the encounter. According to defendant, it is equally likely, based on the evidence presented, that Frye dropped or misplaced the phone or the phone was pickpocketed by another person in the period of time between when Frye last used his cell phone at the gas station and when he encountered defendant for the second time outside Jewel.

¶ 19    Defendant's argument merely sets forth other explanations of the evidence consistent with his innocence and asks this court to raise those explanations to the level of reasonable doubt. We decline to do so. *Wheeler*, 226 Ill. 2d at 117. Moreover, the record contains no evidence that Frye interacted with, was approached by, or was in the general vicinity of any other persons who could have taken his cell phone, or that he dropped it in the five-minute period between his second encounter with defendant and when he realized his phone was missing.  Further, defendant's flight from Frye shortly after their second interaction was circumstantial evidence of defendant's guilt.

See *e.g.*, *In re M.L.*, 232 Ill. App. 3d 305, 308 (1992) (finding the respondent's flight from his accuser was circumstantial evidence of guilt).

¶ 20    Defendant also argues that the State's evidence does not firmly establish he was the person who approached Frye at the gas station and Jewel because "the identification was not made until one month after Frye lost his phone, after Frye had a heart attack, and while he was in the hospital." We disagree.

¶ 21    Here, Frye identified defendant both in a photographic array and in open court. The trial court expressly found Frye's testimony with respect to his identification of defendant was credible, and we will not disturb that finding on appeal. *Ross*, 229 Ill. 2d at 272. This is especially so where, as here, the evidence at trial established Frye encountered defendant twice, at close range and in good lighting conditions, which permitted him to make a positive identification of defendant. See *People v. Slim*, 127 Ill. 2d 302, 307 (1989) (eyewitness testimony sufficient if the witness viewed the accused under circumstances permitting a positive identification). Accordingly, we reject defendant's assertion that the evidence did not firmly establish that he was the person who approached Frye at the gas station and Jewel.

¶ 22    Defendant further notes the State failed to produce any evidence showing why he was arrested or placed into the photographic array shown to Frye. He also points to the lack of evidence showing he was found in possession of Frye's cell phone or surveillance footage from Jewel showing a theft occurred. According to defendant, the absence of such evidence, together with the weakness of Frye's testimony, is fatal to the State's case. We disagree.

¶ 23    The State was not required to introduce physical evidence or video footage of the offense to prove defendant's guilt. See *People v. Daheya*, 2013 IL App (1st) 122333, ¶ 76. Nor was the

State required to prove the circumstances of defendant's arrest. Here, the trial court found Frye's testimony as to the circumstances of his encounter with defendant credible and drew a reasonable inference that defendant took Frye's cell phone from his jacket pocket. We will not disturb the court's finding despite the absence of physical evidence and video footage. See *id.*; *Harris*, 2018 IL 121932, ¶ 27 (testimony of single witness is sufficient to convict if positive and credible).

¶ 24   In sum, after reviewing the trial evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, we do not find the evidence was so improbable or unsatisfactory as to raise reasonable doubt of defendant's guilt. Accordingly, we affirm the trial court's judgment.

¶ 25   We next address the State's request that this court direct the clerk of the circuit court to correct the *mittimus*, based on a discrepancy between the trial court's oral pronouncement of defendant's sentence—four and a half years' imprisonment—and what is reflected on the *mittimus*—four years' imprisonment. According to the State, the court's oral pronouncement of sentence controls over the written sentencing order and, therefore, we must direct the clerk to correct the *mittimus*. See *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87 (the oral pronouncement is the judgment of the court and it controls over a written order). However, because the error complained of falls within the scope of Illinois Supreme Court Rule 472 (eff. May 17, 2019) and the State has raised this contention for the first time on appeal, we decline to do so.

¶ 26   Rule 472(a) provides the circuit court retains jurisdiction to correct certain sentencing errors at any time following judgment, including during the pendency of an appeal. Ill. S. Ct. R. 472(a) (eff. May 17, 2019). Among the errors which may be corrected are "[c]lerical errors in the written sentencing order or other part of the record resulting in a discrepancy between the record

and the actual judgment of the court." Ill. S. Ct. R. 472(a)(4) (eff. May 17, 2019). Pursuant to Rule 472(e), in all criminal cases pending on appeal as of March 1, 2019, in which a party has attempted to raise sentencing errors covered by the Rule, the reviewing court must remand the matter to the circuit court to allow the party to file a motion pursuant to the rule. Ill. S. Ct. R. 472(e) (eff. May 17, 2019); see *People v. Sanders*, 2019 IL App (1st) 160718, ¶ 53.

¶ 27    Here, defendant's appeal was pending on March 1, 2019. The error raised by the State is a clerical error in the written sentencing order which resulted in a discrepancy between the record and the actual judgment of the court. Therefore, Rule 472(e) mandates that the matter be remanded to the trial court so the State can file a motion to raise the claimed error.

¶ 28    For the reasons stated, we remand the matter to the trial court so the State can file a motion under Rule 472, and affirm the court's judgment in all other respects.

¶ 29    Affirmed and remanded as to error in the written sentencing order.